## THE STATE v. CHRISTIAN, *alias* WHITE, *Appellant*

1. **Homicide:** EVIDENCE: RES GESTAE. A homicide occurred about eleven o'clock at night; the testimony of defendant's mother was to the effect that defendant came to the house on the same night between eleven and twelve o'clock, and aroused her from sleep, when she got up and let him in; that he had blood on his face and hands, and told her he had had a difficulty with a student, and had cut him; that he had a knife in his hands with blood on it; except from this testimony, it did not appear how much time had intervened between the cutting and the arrival of defendant at his mother's house, and it did not appear how far she lived from the scene of the homicide; defendant's counsel proposed to identify the knife by the mother, to which the State objected, and the objection was sustained, on the ground that there was no evidence tending to show that the killing was done with the knife proposed to be identified; *Held*, that the objection was properly sustained upon the ground, if no other, that defendant had ample time and opportunity between the occurrence of the difficulty and his arrival at his mother's house to cast away, or conceal the instrument, with which the cutting was done, and substitute the knife in question in its stead.

2. **Harmless Error in Instructions:** MURDER. Defendant sustains no injury from erroneous instructions relating to murder in the first degree, where he is only convicted of murder in the second degree; and for the giving of such instructions the judgment will not be reversed.

3. **Where Instructions** are given, stating a legal principle in approved language, it is not necessary to repeat the same principle in other instructions in different words.

4. **Reasonable Doubt.** Instructions, relating to the question of reasonable doubt, are objectionable, if the jury are not told what a reasonable doubt is. They are also objectionable, if they instruct the jury that, if they have a reasonable doubt as to the evidence of any fact necessary to make up the offense, they must acquit; the accused is only entitled to an instruction relative to the consequences of a reasonable doubt as to his guilt on the whole evidence in the case, and has no right to select a single material fact, and ask the court to direct the jury that, if they have a doubt as to the existence of such fact, they must acquit.

5. **Manslaughter:** MURDER: AGREED COMBAT: SELF-DEFENSE. When all the facts in the case show that the defendant sought and brought on the difficulty, which resulted in the death of his adversary, he is not entitled to have the court instruct the jury in relation to

manslaughter; nor can he avail himself of the right of self defense, however imminent the danger in which he may have found himself in the progress of the affray; and when parties, by mutual understanding, engage in a conflict, and death ensues to either, the slayer will be guilty of murder; and although, when the combat is the immediate consequence of a sudden quarrel, and not an act of deliberation or agreement, the slayer may not be guilty of murder, yet, if he, under color of fighting upon equal terms, uses from the beginning of the contest a deadly weapon, without the knowledge of the other, and kills, or when at the beginning he prepares a deadly weapon, so as to have the power of using it in some stage of the contest, and does use it, and kills the other party with it, the killing will amount to murder.

*Appeal from Boone Circuit Court.*—Hon. G. H. Burckhardt, Judge.

*Turner Sebastian and Peirce & Rollins* for appellant.

1.  The court erred in excluding the testimony of Mrs. White. *Crowther v. Gibson,* 19 Mo. 365; *Harriman v. Stowe,* 57 Mo. 93.

2.  In overruling defendant's objection to instructions 5 and 10, given to the jury at the instance of the State. *State v. Underwood,* 57 Mo. 40; Russell on Crimes, Vol. 1, §§ 527, 528, 529.

3.  In refusing to give instructions 2, 3, 4, 5 and 6, as prayed by defendant. Warton's Am. Crim. Law, §§ 974, 985, 986.

4.  And in instructing the jury, of its own motion, as set forth in the qualification of instruction 8. *State v. Underwood,* 57 Mo. 40.

*J. L. Smith,* Attorney-General, for the State.

1.  The court did not err in refusing to allow defendant's counsel to ask one Mrs. White, (mother of defendant,) if she could identify a certain knife, shown to her, as the one defendant had in his hand, when he came home on the evening of the killing. There was no evidence showing, or tending to show, that this was the knife with which the

killing was done. It is true the testimony tends to show that the killing was done with some sharp instrument, but the exact kind of an instrument, even, is unknown. The fatal wound may have been inflicted with a very different instrument than this knife, and there is nothing shown, either as to time or place, except the mere fact of defendant's having a knife when he arrived at home, which, in anywise, connects the knife offered in evidence with the killing. It is not shown to be a part of the *res gestae*, and, hence, is inadmissible. 1 Greenleaf Ev., Sec. 108; *Merchants' Bank v. Berthold*, 45 Mo. 527; *Brownell v. Pacific R. R.*, 47 Mo. 239; *Harriman v. Stowe*, 57 Mo. 93. Again, the declarations and conduct of a defendant, not on the occasion of the killing, in his own interest, are not admissible in evidence; he cannot manufacture testimony in his own behalf. *McLean v. Rutherford*, 8 Mo. 114.

2. There was no error in the giving of instructions 5 and 10 for the State. Wag. Stat. Vol. 1, p. 446, Sec. 2; *State v. Kennedy*, 20 Iowa 569; *State v. Benham*, 23 Iowa 154; *State v. Hays*, 23 Mo. 287; *State v. Starr*, 38 Mo. 270; *State v. Shoultz*, 25 Mo. 152; *State v. Green*, 37 Mo. 466; Russell on Crimes, (Ed. of 1845,) Vol. 1, pp. 527, 528, 529, 530, 531, 537; 1. East P. C., Ch. 5, § 24, p. 241; *State v. Scott*, 4 Iredell 409; *State v. Underwood*, 57 Mo. 49; *State v. Hudson*, 59 Mo. 137. A conviction of the crime of murder in the second degree necessarily acquitted him of murder in the first degree. To reverse this case because an instruction on a grade of homicide of which the appellant was acquitted, was erroneously given, would be practically allowing him to take advantage of an error in his favor.

3. The court rightly refused to give instructions Nos. 2, 3, 4, 5 and 6, as asked by defendant, and did not err in adding the qualification to defendant's instruction No. 8. *State v. Harris*, 59 Mo. 556; *State v. Hudson*, 59 Mo. 138; *State v. Schoenwald*, 31 Mo. 147; *State v. Starr*, 38 Mo. 270.

4. Instructions given, Nos. 1 to 17, (including 8 and

11 refused,) for plaintiff; 1, 7 and 8 for defendant. as a whole, fully declared the law of the case, and if that be so, then there is no reversible error.   *State v. Hudson,* 59 Mo. 138 ; *State v. Shoultz,* 25 Mo. 155.

NORTON, J.—Defendant was indicted at the April term 1876, of the Boone county circuit court, for murder in the first degree, in killing one Sydney E. Smith.   He was duly arraigned and put upon his trial at the August term, 1876, of said court, which resulted in his conviction of murder in the second degree. and the assessment of his punishment to fifteen years imprisonment in the penitentiary.

The motions of defendant for new trial and in arrest of judgment having been overruled, he brings the cause to this court by appeal.   The causes relied upon for a reversal of the judgment, are the alleged errors of the court in excluding legal evidence, and in giving improper and refusing proper instructions.

The mother of defendant was introduced as a witness on the trial, and testified that defendant came to her house 1. HOMICIDE: evidence: *res gestae.* on the night of March 4th, 1876, between eleven and twelve o'clock; tl at she was asleep when he came, and on being aroused, she got up and let him in ; that he had blood on his face and hands, and told her that he had had a difficulty with a student and had cut him ; that defendant had a knife in his hands with blood on it.   The counsel of defendant then proposed to identify the knife by her, to which the State objected, which objection was sustained on the ground that there was no evidence tending to show that the killing was done with the knife proposed to be identified.   We are at a loss to perceive on what principle the rejected evidence could have been received.   The killing took place about eleven o'clock of the night of March 4th, 1876.   Immediately after the stabbing, resulting in the death of deceased, was done, defendant fled.   How much time elapsed between the cutting and the arrival of defendant at the house of

his mother, does not appear, except from her statement that she was aroused from sleep by defendant between eleven and twelve o'clock, nor does it appear how far she lived from the scene of the homicide. What defendant said or did after he reached the house of his mother between a half hour and hour after the tragedy was enacted, does not constitute a part of the *res gestae*. To thus extend the rule would be laying down a dangerous precedent under cover of which persons charged with homicide could manufacture evidence in their own favor. We think that the objection was properly sustained upon the ground, if no other, that defendant had ample time and opportunity between the occurrence of the difficulty and his arrival at the house of his mother to cast away or conceal the instrument with which the cutting was done, and substitute the knife in question in its stead.

Seventeen instructions were asked for by the State, all of which were given except the eleventh. To the fifth and 2. HARMLESS ERROR tenth defendant excepted. The two instruc-
IN INSTRUCTIONS:
murder. tions thus excepted to relate to the offense of murder in the first degree, and as defendant was convicted only of murder in the second degree, he has sustained no injury thereby, though they might be open to the objections urged against them by counsel. No exceptions were taken to the instruction given by the court relating to the offense of which defendant was convicted, and no objection has been urged to it here.

Exceptions were also taken to the action of the court in refusing instructions numbered 2, 3, 4, 5 and 6, asked 3. INSTRUCTIONS. for by defendant. The second and fourth of the refused instructions relate to the question of reasonable doubt, and as the court had given the usual instructions embracing that subject in language often approved by this court, it was unnecessary to repeat the same principle in other instructions in different words.

Besides this, the instructions as asked were objectionable in their phraseology, and were calculated to mislead

The State v. Christian, alias White.

**4. REASONABLE DOUBT.** in this, that in neither of them was the jury told what a reasonable doubt was. They were also objectionable because the court was asked to instruct the jury that if they had a reasonable doubt as to the existence of any fact necessary to make up the offense, they must acquit. This instruction was in direct conflict with the ruling of this court in the case of *State v. Schoenwald*, 31 Mo. 147, where it was held that the court committed no error in refusing an instruction to the effect that if all the facts and circumstances left it in doubt whether defendant, or some other person, inflicted the fatal blow, they could not find defendant guilty. It is the well settled law here that the accused is only entitled to an instruction relative to the consequences of his guilt on the whole evidence in the case, and that he has no right to single out each material fact necessary to be found, and ask the court to direct the jury that if they have a doubt as to the existence of such fact, they must acquit.

The third, fifth and sixth instructions were to the effect that if defendant and deceased engaged in a mutual **5. MANSLAUGHTER: murder: agreed combat: self-defense.** combat, and such combat became unequal by reason of the greater physical strength of the deceased, and defendant, in the heat of blood engendered by the conflict, stabbed the deceased with a deadly weapon, without the design to effect death, and the killing was neither justifiable nor excusable, they will find defendant guilty of manslaughter in the third degree, unless they should further find that said combat was entered into with the design and purpose to kill the deceased, or to do him great bodily harm.

These instructions were refused, and the court gave the following : " If the jury believe from the evidence that defendant and deceased engaged in mutual combat, and that such combat became unequal by reason of the greater physical strength of the deceased, and that defendant's blood became heated on lawful provocation, that defendant, in such heat of blood, with a deadly weapon, and

without a design to effect death, stabbed and killed the deceased, and that such killing is neither justifiable nor excusable, you can find defendant guilty of no crime greater than manslaughter in the third degree, unless you shall further find that defendant and deceased had a mutual understanding and determination to engage in such conflict or fight."

This instruction, when applied to the facts of this case, is as favorable to the defendant as the facts developed in the evidence would warrant. It appears from the evidence that on the night of the 4th of March, the defendant and one Kennard met Smith, the deceased, at Gilman & Dorsey's drug store, in Columbia. On that occasion Kennard walked up to Smith and said your name is Haistings; you are the man who whipped A. P. Clarkson, but by G—d you can't whip me. Smith, the deceased, replied, you are mistaken; my name is not Haistings. Kennard remarked you said your name was Haistings. Kennard was then told by some one present that the name of deceased was not Haistings; to which he replied that it was, and that he carried a pistol to shoot such men as him. Deceased, in company with witness Winston, then left the drug store and went to a barber shop. Shortly afterwards Kennard and defendant followed them to the barber shop; Kennard staring insolently at the deceased when he came in. Deceased and witness Winston shortly afterwards left the barber shop and were followed by Kennard and defendant, and having gone twenty-five or thirty yards, Kennard and Smith got into a quarrel about Smith's name being Haistings. He was told by the witness Winston that he was mistaken, that the name of deceased was Smith, and not Haistings. White, the defendant, then spoke up and told Kennard to give Smith a drink of whisky, in a laughing, sneering manner, which provoked Smith to anger. Smith, in company with Winston, then started to their boarding house, and having gone a few steps, defendant called to him to stop and come back and get that drink Kennard

was going to give him, whereupon deceased replied, and told him to take his whisky and go to h—l with it, further adding that, if White would come up to him he would whip him. White went up, and Smith declined by saying that he had no money to pay fines for whipping children. They quarreled and cursed each other for some time, White during the time, patting Smith on the arm, saying he could whip him. Kennard stepped in between Smith and White, and asked Smith if he considered him a child or boy, when defendant came up between deceased and Kennard, and began quarreling and patting Smith on the arm. Smith finally said to defendant that, if he would come out in the street he would whip him, and let the fine go to h—l. Smith went out into the street a little, White following just behind, Kennard and Winston behind the two. White and Smith stepped about the middle of the street and began pushing each other with their arms. They struck two blows each, on each other's arms. White then jumped up to Smith and struck him, jumped backward, turned and ran off. Smith, with the blood spurting from his neck, remarked that he was cut. Winston led Smith five or six steps back to the pavement, when deceased said he was dying, and fell forward on his head in the street. He died, according to the evidence, in five minutes, or less, after he was cut, the external carotid artery having been severed. The evidence does not show that deceased had a weapon of any kind.

It is plainly inferrible from the above facts, that the difficulty was sought for and brought about by defendant. The deceased was followed from place to place by Kennard and White, who seemed to be acting in concert, first one and then the other using provoking language, and when Smith had left for his boarding place, defendant called to him to stop and take a drink, after full knowledge on his part, that he had already provoked him by his words, and that Smith had started home. When Smith declined to fight him, defendant continued his provocation by patting him

on the arm in an angry manner, telling him he could whip him, until deceased finally agreed that he would fight him, if he would go out into the street, evidently intending a fair fight without weapons, a trial of natural strength. The proposal was accepted by defendant, but not in the spirit in which it was made, as the sequel proved. It is true that no weapon was seen in the hands of defendant at the time of the stabbing, but the severance of the artery in the neck establishes the fact that defendant inflicted the fatal blow with a dirk knife, or some other sharp and deadly weapon.

The circumstances surrounding the tragedy lead irresistibly to the conclusion that White must either have had the weapon with which he inflicted the wound in a position to be used, when he came up to Smith on the pavement for the purpose of fighting him, or must have drawn or prepared it for use, after he had accepted Smith's proposal to go out in the street and fight, and while he was following him out. It seems to be clear that he did not draw or prepare the weapon after the conflict began, for the only witness who saw the difficulty and testified in regard to it, swears that they struck each other twice on the arms, when defendant jumped up to Smith, struck him, turned, and ran. While engaged in striking each other's arms he could not have drawn and prepared the weapon used by him, and the witness does not state that he saw defendant draw any weapon. Under this view the court might well have declined to instruct the jury as to any degree of manslaughter, for every fact in the case goes to show that defendant sought and brought on the difficulty.

It has been held, by this court, that it is the well settled doctrine that a party who seeks and brings on a difficulty, and voluntarily engages in it, cannot avail himself of the right of self-defense, in order to shield himself from the consequences of killing his adversary, however imminent the danger in which he may have found himself in the progress of the affray. *State v. Underwood*, 57 Mo. 40;

*State v. Starr*, 38 Mo. 270; *State v. Linney*, 52 Mo. 40. It was also held in the case of the *State v. Underwood*, that when parties, by mutual understanding, engage in a conflict, and death ensues to either, the slayer will be guily of murder. When the combat is the immediate consequence of a sudden quarrel, and not an act of deliberation or agreement, it might be different; but even in cases of this kind the conclusion of malice may be reached, if the party killing began the attack with circumstances of undue advantage. When a party, under color of fighting upon equal terms, uses, from the beginning of the contest, a deadly weapon, without the knowledge of the other, and kills, or when, at the beginning, he prepares a deadly weapon, so as to have the power of using it, in some part of the contest, and does use it, and kills the other party with it, the killing will amount to murder. 1 Russell on Crimes 529, 531. Under the facts of the case, and the law as applicable to them, the court rightfully refused the third, fifth and sixth instructions. The instruction given by the court in the place of those refused, was more favorable than the facts warranted.

The sixth instruction given on behalf of the State, which was not excepted to in the court below, but is complained of here, is a copy of an instruction approved by this court in the case of the *State v. Shoultz*, 25 Mo. 153.

Judgment affirmed; with the concurrence of the other judges.

AFFIRMED.