THE STATE v. OWENS, *Appellant.*

1. **Burglary and Larceny.** A person indicted under section 1301, Revised Statutes 1879, for burglary and larceny, may be convicted of the larceny though the charge of burglary fail. This is too well settled by repeated decisions of this court to admit of further debate.

2. ——. On trial of an indictment for burglary and larceny, the jury were instructed that it was not necessary to conviction that defendant should actually have broken into the shop and stolen the goods, but "he was guilty if he was present aiding, advising or assisting in the act." *Held*, that there was no uncertainty as to the meaning of the word "act." It referred either to the burglary or the larceny.

3. **Recent Possession** of a part of the stolen property is presumptive evidence that the possessor stole the whole of it.

4. **Recent Possession** of goods stolen in the commission of a burglary, is evidence that the possessor is guilty as well of the burglary as of the larceny; but if the rule were otherwise, a person indicted for both burglary and larceny, but acquitted of the larceny, could not complain of an instruction declaring this to be the law.

5. **Reasonable Doubt.** The court below instructed that it was not necessary to prove defendant's guilt by the testimony of eye witnesses to the offense; that it might be shown by proof of facts and circumstances from which it could be reasonably and satisfactorily inferred; and the court also gave a proper instruction as to reasonable doubt. *Held*, that considering the two instructions together, the former was not calculated to induce a verdict on proof of facts less than required by the rule of reasonable doubt.

6. **An Instruction** examined and *held* upon the whole not to be a commentary on the evidence.

| 79 | 619 |
| 101 | 330 |

| 79 | 619 |
| 105 | 639 |
| 44 | 517 |

| 79 | 619 |
| 111 | 264 |

| 79 | 619 |
| 117 | 404 |
| 117 | 664 |
| 79 | 619 |
| 136 | 49 |

| 79 | 619 |
| 140 | 677 |
| 140 | 679 |

| 79 | 619 |
| 146 | 41 |

7.  **An Instruction** as to larceny examined and *held* to be confusing and misleading, and, therefore, erroneous.

8.  **Practice**: WITHDRAWING EVIDENCE BY INSTRUCTION. If, upon a criminal trial, incompetent evidence reaches the jury without objection made at the moment by defendant's counsel, but he afterward prays the court to withdraw it from their consideration by instruction, it is the duty of the court to grant the prayer.

9.  **Reasonable Doubt.** The court below, in an instruction defining reasonable doubt, declared it to be "a *real* substantial doubt." *Held*, that the word "real" was expletory, and should not have been used.

*Appeal from Andrew Circuit Court.*—HON. H. S. KELLEY, Judge.

REVERSED.

*Wm. Heren & Son* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

PHILIPS, C.—The appellant, with one Marion Owens, was indicted for burglary and larceny, committed by entering a shoe and harness shop and taking away certain specified property. There was a severance at the trial, and this defendant was convicted of the larceny and sentenced to two years in the penitentiary. From this judgment he has appealed to this court.

The leading features of the evidence are, that the defendants are cousins. Sidney Owens was reared in Nodaway county, and in the spring of 1878 he came to DeKalb county near a small village named Union Star, which was partly in the counties of DeKalb and Andrew. The store in question was situate in the latter county, and was occupied by one Barton and one Miller jointly as a shoe and saddler shop. The defendant Sidney had raised a crop in the neighborhood of this village that season, living with his brother-in-law, Blackford. The evidence showed that up to the time of the charge against him in question he had borne a good character.

In the month of October of that year the said Marion Owens came from the state of Iowa with a two-horse wagon, and stopped at said Blackford's, and worked some in the neighborhood, making Blackford's his usual place of stopping where he kept his team. He and Sidney slept together in the same bed, and were usually together at nights. At the saddle shop in question, Sidney, sometime previous to the alleged burglary, had ordered a bridle made. Shortly before the burglary he and Marion were in this shop looking at the bridle then ready for delivery, but defendant said he was not then prepared to pay for the same, and went away without it. They also, while in the shop, looked at a set of harness which had been made for another party. A few evenings afterward, on the 5th day of November, 1878, both Sidney and Marion attended a social party in the neighborhood. Between ten and eleven o'clock, or about that time, they left the party as if to go home. That night the storehouse was burglarized, the bridle and harness aforesaid were taken, as also a four-barrelled pistol, a pocket knife, pocket book, a valise and zinc trunk alleged to contain clothing, etc., one pair martingales and one pair boots, and perhaps other articles, with the value of each article set out in the indictment. About two weeks after this both of the parties disappeared from the neighborhood, and inquiry showed they left in the night with the said wagon and horses and a horse belonging to defendant Sidney. The course taken by them on leaving Blackford's was tortuous and unusual. The next morning after their departure they appeared at the house of defendant's father. A few days afterward they were arrested in Maryville, Nodaway county, by a deputy constable who had received information of the theft and burglary and a description of the property stolen. When taken before the magistrate of that town, who had issued the warrant, the said constable testified that the magistrate informed them of the charge against them, and asked: "Are you guilty or not guilty?" that defendant Sidney spoke up promptly and said "guilty,"

and that Marion nodded assent. The committing magistrate testified, first corroborating the constable's statement, but on cross-examination said it was Marion who answered "guilty" and Sidney nodded assent. Neither of them, however, appears to have protested his innocence. The martingales in question were found on defendant Sidney's horse, which he was riding, and the knife, pistol and boots were found on Marion. There was also found on defendant's horse a bridle and saddle taken about the same time from one Dale. The balance of the stolen property was never found. The State introduced evidence tending to show that shortly after the burglary and larceny the defendant was seen with a pistol answering to the description of that taken from the store, which he proposed to trade to a neighbor friend.

The defendant, after making proof of general good character, testified in his own behalf, stating that on the night of the burglary, after he and Marion started home from the party, Marion said he would go to Union Star to meet a friend; that he separated from him, went on to his brother-in-law's and to bed; that in the night sometime Marion came in and went to bed with him. He did not ask Marion for the name of the friend he went to meet. He heard of the burglary the next day, and was afterward in Union Star. About the 20th of that month he and Marion started to Maryville, with a load of corn to sell, when they met a man on the road whom Marion said he knew in Iowa, and that he was apprehensive he was after him as he had trouble in Iowa for striking a man with a slung-shot. He did not inquire the name of this man from Marion. They turned aside from their purpose to go to Maryville and went to some railroad station and sold the corn and returned to Blackford's. Marion determined to leave that night, against the protestations of himself and Blackford. Accordingly they hitched up the team of Marion, and tying his own horse behind the wagon, they left about sundown, traveling all night, arriving at his father's about sunrise

the next morning. He claimed that he got or borrowed the saddle, bridle and martingales from Marion, who said he had bought them of some traveler before leaving Blackford's. He denied making the plea of guilty before the magistrate, and said the pistol he showed the witness on the night testified to by the witness, was not the pistol in question, but was a Remington pattern which he had owned for a long time.

The instructions are numerous, and will be noticed so far as necessary in the opinion, as also other incidental questions raised by the appellant.

I. It is insisted that the motion in arrest should have been sustained, for the reason that under section 19, page 785, General Statutes 1865, the same as section 1301, Revised Statutes 1879, a conviction for larceny cannot be sustained without the finding of the burglary. In other words, the larceny is an incident of the burglary, and the incident cannot follow except from the principal cause. The argument made by the learned counsel in support of this construction, is ingenious and plausible. But the question is now too well settled by the repeated decisions of this court to admit of further debate. Under this section burglary and larceny are two distinct offenses, and the two may be united in the same count, and the jury may convict of either. *State v. Alexander*, 56 Mo. 131; *State v. Turner*, 63 Mo. 436: *State v. Barker*, 64 Mo. 282; *State v. Davis*, 73 Mo. 129; *State v. Bruffey*, 75 Mo. 389; *State v. Martin*, 76 Mo. 337; *State v. Kelsoe*, 76 Mo. 505.

II. The appellant complains of the following instruction: "It is not essential to the guilt of the defendant that he should actually break into and enter the shop in person, or that he should steal the goods from the shop. It is sufficient if the defendant was present, aiding, advising or assisting in the act, and was present for that purpose. If, therefore, the jury believe from all the facts and circumstances in evidence that the defendant is guilty as charged in the indictment, or aided or assisted in the commission

of the offense, the jury should find the defendant guilty."

The criticism made on this instruction is the employment of the phrase "if the defendant was present aiding, etc., in the act." It is claimed that as the indictment contained the charge of a burglary, as well as of larceny it is uncertain as to which of the offenses the word "act" applies, whether to one or to all. This is hypercritical—a mere refinement. The instruction must be construed in reference to the subject matter. The obvious purpose of it was, not to define to the jury the separate character of the offenses charged in the indictment, but it was to advise the jury simply that in order to find the defendant guilty of the offenses or offense charged, it was not necessary that they should believe from the evidence that he actually entered the building by breaking in himself or that he actually carried away the goods; but if they believed from the evidence that he was present aiding or counselling the "act" of the person who did enter the shop or who did steal the goods, that would be sufficient to authorize them to find the defendant guilty. The "act" manifestly referred to was the act of the burglary or the act of the theft. Other instructions advised the jury of their right, under the indictment, to find the defendant guilty of either the burglary or the larceny. No jury of ordinary intelligence could have been misled by this instruction.

III. The following instruction is vigorously assailed by defendant's counsel: "If the jury believe from the evidence that the shop in question was broken into and entered, and certain goods or property were stolen from said shop, and recently afterward any part of the property so stolen was found in the possession of defendant, such possession of said property would be presumptive evidence that defendant stole the goods, and if not satisfactorily rebutted by other facts and circumstances in proof, such possession would warrant a verdict of guilty as to the larceny. Possession of a part of the stolen goods recently after the larceny, is a circumstance from which the jury may infer

that all the stolen goods were taken at the same time and by the person having possession of such part, and such recent possession of property stolen at the time of the burglary may, when taken in connection with other facts tending to establish guilt, warrant the jury in finding the defending guilty of burglary and larceny. The presumption of guilt arising from the mere naked fact of possession of the stolen goods, when not corroborated or strengthened by other evidence as to the commission of the offense, would be rebutted by the fact of the defendant's good character, if the jury believe from the evidence that he sustain a good character. But it is for the jury to say, after taking into consideration all the evidence in the case, that in relation to the possession of the goods by defendant, that in relation to his character by statements or admissions made by defendant in regard to the offense, together with all the facts and circumstances in proof, whether the defendant is guilty or not; and if the jury believe, from all the evidence, facts and circumstances in proof, that the defendant is guilty, they should find him guilty; otherwise they should find him not guilty."

The objection lodged against this instruction is, that it is so framed as to lead the jury to infer that if recently after the burglary and larceny a part of the stolen goods were found in the possession of the defendant, this was presumptive evidence that he stole all the goods taken at the time of the burglary "if not satisfactorily rebutted by other facts and circumstances in proof." Prof. Greenleaf says : " The possession of the fruits of crime recently after its commission is *prima facie* evidence of guilty possession, and if unexplained either by direct evidence or by attending circumstances, or by the character and habits of life of the possessor or otherwise, it is taken as conclusive." 1 Greenleaf Ev., § 34. In *State v. Barker*, 64 Mo. 282, HENRY, J., said : " The possession of a part of the stolen goods of the smallest value, in connection with other circumstances,. might clearly fix the guilt of stealing all the goods upon

40—79

the defendant." In *State v. Davis*, 73 Mo. 133, HOUGH, J., said: "Only a portion of the goods stolen was found in the possession of the defendant, but this fact, in connection with other concurring circumstances, was sufficient to warrant the jury in finding him guilty of stealing them all." In *State v. Sidney*, 74 Mo. 391, it will be seen that the instruction approved by the court distinctly alleged that: "Where property has been stolen, and recently thereafter the same property, or any part thereof, is found in the possession of another, such person is presumed to be the thief, and if he fails to account for his possession of such property in a manner consistent with his innocence, this presumption becomes conclusive against him; and in such case the law further presumes that the thief resorted to and made use of all the means necessary to gain access to and possession of such stolen goods."

Counsel also denounces the following language found in the second division of said instruction: "may, when taken in connection with other facts tending to establish guilt, warrant the jury in finding the defendant guilty of burglary and larceny."

Even if the doctrine of such presumption were inapplicable to the crime of burglary, as counsel seems to think, he could not assign error on it here for the reason that defendant was not convicted of the burglary.

The court, in another instruction, distinctly told the jury that they were not authorized to infer the commission of the burglary from the recent possession of the goods. In this the defendant obtained a more favorable declaration of law than he was entitled to. In *State v. Babb*, 76 Mo. 501, this court has expressly settled the law to be that the presumption which arises from recent guilty possession of stolen property, is not confined to any particular class of felonies, but is just as applicable to the burglary as to the larceny. This same rule has been again applied at this term of court in the case of *State v. Wheeler*, *ante*, p. 366.

So that had the law been fully applied to the defendant's case he might have been convicted of the burglary.

IV. The giving of the following instruction is assigned for error: "It is not necessary to prove that defendant was guilty by the testimony of witnesses who may have seen the offense committed. His guilt may be shown by the proof of facts and circumstances from which it may be reasonably and satisfactorily inferred." It was argued that this instruction was calculated to mislead the jury by inducing a verdict on proof of facts less than required by the rule of a reasonable doubt. We do not attach any such scope to the instruction. Its manifest office was to advise the jury, as matter of law, that although they had been advised in one or more instructions given in the case that the guilt of defendant must be established beyond a reasonable doubt before they could convict, yet it was not essential that this result should be based on the evidence of eye witnesses to the act itself; but they were permitted to draw such conclusion from facts and circumstances in evidence reasonably and satisfactorily leading and conducting the mind to a conclusion of guilt. The argument of counsel would utterly destroy the whole doctrine of legal presumptions and circumstantial evidence. The instruction rests upon that common observation and experience of mankind "that one fact is usually the concomitant of another fact." 1 Greenleaf Ev., § 33. "When the fact itself cannot be proved, that which comes nearest to the proof of the fact is the proof of the circumstances that necessarily and usually attend such fact, and these are called presumptions and not proofs, for they stand instead of the proofs of the fact till the contrary can be proved." Gilbert Ev., 157. As certain causes produce certain known results, a jury are authorized to infer from the very logic of the facts proved the existence of the fact producing such known result; and *vice versa*, they may infer a certain result from a proven producing cause. The instruction elsewhere given by the court touching a reasonable doubt, applied to the

instruction under discussion, as to every other given in the case. *State v. Christian*, 66 Mo. 138.

V. Complaint is made of the following instruction : "Although the jury may believe from the evidence that the defendant sustained a good character previous to the alleged offense, yet if the jury believe from the evidence, that in relation to his character being considered, together with all the other facts and circumstances in proof, that defendant is guilty beyond a reasonable doubt, his good character alone cannot be looked to as a ground of acquittal." Considering the entire phraseology of this instruction, we cannot say it was a commentary on any particular part of the evidence ; for it tells the jury in effect that they should have regard to the evidence of the defendant's character, as well as all other facts in proof. But we deem it proper to say that it would be the safer and more just course if the trial courts would refrain from giving such instructions so near the verge of error. The good character of the defendant, under the circumstances of this case, was valuable to him, as it rebutted the presumption of guilt springing from the mere fact of recent possession of the stolen property, unless the possession was attended with other circumstances of an inculpatory character. The office which the proof of good character performs in such a case had been, as it should be, explained to the jury in another instruction, and that was sufficient. To group it with other features of the case of an inculpatory suggestive nature might detract from its due consideration.

VI. The defendant asked the court to give the following instruction : " If the jury should acquit as to the offense of burglary, as charged, and should find the defendant guilty of larceny, the jury will assess his punishment as follows : If the jury find from the evidence that defendant stole and carried away goods to the value of $20 or more, they will find him guilty of grand larceny, and assess his punishment in the penitentiary not exceeding five years. If you should find that he stole and carried away less than

$20 worth of goods, as charged, you will find him guilty of petit larceny, and assess his punishment in the county jail not to exceed one year, or by a fine not exceeding $100, or by both such fine and imprisonment."

The court refused to give said instruction, but changed it and gave in lieu the following: "If the jury should acquit as to the burglary, as charged, and should find the defendant guilty of larceny, the jury will assess his punishment as follows: If the jury find from the evidence that the defendant stole and carried away, as charged in the indictment, or aided in stealing and carrying away goods to the value of $20 or more, they will find him guilty of grand larceny, and assess his punishment in the penitentiary not exceeding five years nor less than two. If you should find that he stole and carried away, or aided in stealing and carrying away less than $20 worth of goods, as charged, and that the same were not stolen at the time of the commission of the alleged burglary, you will find him guilty of petit larceny, and assess his punishment by imprisonment in the county jail not to exceed one year, or by fine not exceeding $100, or by both such fine and imprisonment."

The instruction asked by the defendant, or its equivalent, should have been given. As already declared and abundantly sustained by the repeated decisions of this court, the indictment embraced two distinct offenses—burglary and larceny; and the defendant might have been convicted of both or either. If, therefore, the jury found the defendant not guilty of the burglary, but found him guilty of larceny, under the evidence they might have found him guilty of either grand or petit larceny. In *State v. Barker*, 64 Mo. 284, HENRY, J., said: "While a person may be charged and indicted with both burglary and larceny in one count, if acquitted of burglary and found guilty of larceny it will still be petit or grand larceny according to the value of the property stolen." The evidence in this case showed, if the State's witnesses are credited, that the value of the

property taken from the shop was over $20. But the value of the property found in the possession of the defendant was far below $20. The jury, under the instructions, were authorized to presume, from a recent possession of a part of the stolen property in connection with other facts and circumstances in proof, that defendant stole all the property taken from the store at that time. But that was a mere presumption, and the jury might not have been reasonably satisfied to find the defendant guilty of the caption of more property than was actually found in his possession; especially in view of the fact that taking into account all the property found in his and Marion's possession the aggregate was less than $20. The amended instruction given by the court should be preferred to that asked by the defendant, with the omission of the following words in the second division respecting petit larceny: "and that the same was not stolen at the time of the commission of the alleged burglary." These words were quite unnecessary, confusing and misleading. If the jury found the defendant not guilty of the burglary, why say anything in the instruction respecting the petit larceny about the "commission of the alleged burglary?" The defendant was entitled to a plain and unambiguous declaration in this connection as to the difference between grand and petit larceny. In this action of the court there was error.

VII. It was developed by the State's evidence that the bridle and saddle found on defendant's horse at the time of his arrest in Maryville belonged to one Dale of DeKalb county, who testified that he afterward recovered the saddle from the sheriff, into whose custody, it is to be inferred, the saddle passed on the arrest. On cross-examination he stated, however, that the saddle and bridle were not in the said shop at the time of the burglary and theft. It does not appear from the bill of exceptions that the defendant, at the time of the delivery of this evidence, made any objection thereto, but at the conclusion of the case asked the following instruction: "The court instructs the jury that

they will exclude from their consideration all evidence in the consideration of the guilt or innocence of the defendant, all evidence as to the saddle and bridle taken from Dale, as they are not included in the indictment."

It is difficult to discover the grounds of court's refusal to give this instruction, except upon the hypothesis of its wretched tautology and construction. The principle announced in it is correct. In the case of the *State v. Cox*, 65 Mo. 32, the prisoner was on trial for murder. A witness, in detailing a conversation had with the prisoner, stated, among other things, that Cox, who was already married, told him he was about to be married in Texas, and for witness not to say anything about his having a wife in Arkansas. No objection was made to this statement at the time, but an instruction, as in this case, was asked directing the jury to exclude from their consideration this part of said witness' testimony. The court refused to give it, and this court held that it should have been given. Evidence getting before the jury in a criminal trial under circumstances like these, may not at the instant be observed, or come so suddenly it cannot be anticipated by a reasonable objection. Where it is calculated to unduly prejudice or affect the mind of the jury, the court ought, so far as possible, to repair the injury by an appropriate instruction. It is easy to see how the minds of the jury may have been impressed by the defendant having on his horse the saddle of a neighbor wrongfully taken, when he was being tried for a kindred offense. It was a distinct felony, and as such was inadmissible on the trial of this case, it not appearing that it was so allied in time and circumstances to the theft in question, as to bring it within the rule permitting another offense to be introduced on the trial of a like offense.

VIII. As this case is to be remanded for the errors announced, it is deemed not impertinent to call the attention of the trial court to the language employed in the instructions touching reasonable doubt. In defining the

reasonable doubt the instructions say "such doubt must be a *real* substantial doubt," etc. The word "real" is expletory. The old phrase was simply "a reasonable doubt." In the *State v. Nueslein*, 25 Mo. 123, the instruction went further and defined a reasonable doubt by declaring that it was "a substantial doubt touching defendant's guilt, and not a mere possibility of his innocence." This was, with some straining, approved by the court and has since been followed in the courts of this State. But now we have in this case another qualifying term affixed, that it must be "a real, substantial doubt." It is safe and wise in the administration of criminal law to adhere to the ancient forms and terms. They are generally founded in a wise conservatism. The reasonable doubt which the law throws round the accused is a humane and beneficent rule in favor of life and liberty, and is too sacred to be whittled away by the encroachments of qualifying expletives.

The judgment of the circuit court is, for the errors named, reversed, and the cause, as to the larceny, remanded for further proceeding in conformity with this opinion. EWING, C., concurs; MARTIN, C., absent.