# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI.

AT THE

## APRIL TERM, 1887.

---

### THE STATE v. BLUNT, *Appellant.*

1. **Evidence.** Evidence having no bearing on the question in issue is properly excluded.

2. **Criminal Practice:** REASONABLE DOUBT. An instruction which defines a reasonable doubt to be a *real*, substantial, well-founded doubt, arising out of the evidence in the cause, and not a mere possibility that the defendant is innocent, does not contain reversible error, because of the use of the word, *real.*

3. **Criminal Law:** INSTRUCTIONS. The trial court, on the evidence in this case, properly instructed on murder in the first, and manslaughter in the second, degree, and did not commit error in failing to give an instruction as to murder in the second degree.

*Appeal from St. Louis City Criminal Court.*—HON. G. S. VAN WAGONER, Judge.

AFFIRMED.

(503)

*J. L. Hornsby* for appellant.

(1) The court erred in refusing to allow defendant to show the fact that deceased had been prejudiced against defendant, and that, in consequence of such prejudice, she desired to rid herself of him, thereby showing a motive for the attack made by her upon him, and thus corroborating defendant's testimony. *State v. Elkins*, 63 Mo. 159. (2) The instruction of the court defining reasonable doubt was erroneous. *State v. Leeper*, 78 Mo. 470; *State v. Owens*, 79 Mo. 619; *State v. McNally*, 87 Mo. 644; *State v. Smith*, 21 Mo. App. 595. (3) The court should have given an instruction for murder in the second degree in view of defendant's testimony. *State v. Wieners*, 66 Mo. 13; *State v. Robinson*, 73 Mo. 306; *State v. Curtis*, 70 Mo. 599; *State v. Ellis*, 74 Mo. 207; *State v. Lewis*, 74 Mo. 222; *State v. Kotovsky*, 74 Mo. 247; *State v. Rose*, 14 Mo. App. 567, 572; *State v. Banks*, 73 Mo. 591.

*B. G. Boone*, Attorney General, for the state.

(1) The only objection made or exception saved to the introduction or exclusion of evidence was to the refusal of the trial court to permit an answer to be made to this question asked a Mrs. Boas, by the defence: "Did you ever hear any one speak to Mary about her having acted foolishly in marrying a cripple like Blunt?" It is submitted, without the citation of authorities, that this question could not, by even a remote conjecture, have a shadow of relevancy to the material fact at issue, and its exclusion was, therefore, clearly proper. The case of the *State v. Elkins*, 63 Mo. 159, in regard to the admissibility of uncommunicated threats made by a deceased in regard to the accused, is cited by counsel for the defence, in support of the theory that the reply to the question above set forth was improperly ex-

cluded. We find no reasonable similarity between the case cited and the question asked. (2) The instruction as given in this case, on reasonable doubt, has received the express approval of this court in *State v. Jones*, 86 Mo. 627; and *State v. Payton*, 7 West. Rep. 129; s. c., 90 Mo. 220. (3) The court gave instructions defining murder in the first, and manslaughter in the second, degree, and the other formal and explanatory instructions in a case of homicide. The instructions given were all that were justified by the evidence. *State v. Wilson*, 86 Mo. 520. Defendant was not entitled to an instruction for murder in the second degree on his own testimony. He stated that his wife struck at him with a razor; it caught on his hand; he took it from her and cut her, not once, but repeatedly, across the neck. In the case of the *State v. Wilson*, 88 Mo. 13, 18 and 19, in which the testimony of defendant, in his own behalf, was much stronger than in the case at bar, this court approved the action of the trial court, in refusing to give an instruction for murder in the second degree, and affirmed the judgment.

NORTON, C. J.—Defendant, on the ninth of December, 1886, was tried in the St. Louis criminal court and convicted of murder in the first degree for killing his wife, Mary Blunt, from which judgment he has appealed to this court, and assigns for error the action of the court in refusing to admit certain evidence offered, and in the matter of giving instructions.

During the progress of the trial a witness was asked by counsel for defendant the following question: "Did you ever hear any one speak to Mary about her having acted foolishly in marrying a cripple like Blunt?" The state interposed an objection to the question, which the court sustained, and this is the only complaint made as to the action of the court in rejecting evidence, and it is not well founded, inasmuch as it had no bearing on the questions in issue in the case. If the object of the ques-

tioner was to prove threats on the part of the deceased against the accused, the question should have been so framed, and had the court then refused to allow it to be answered, the case of the *State v. Elkins*, 63 Mo. 159, to which we have been cited, would have applied.

The jury were told in an instruction that, "to authorize an acquittal on the ground of reasonable doubt alone, such doubt should be a real, substantial, well-founded doubt, arising out of the evidence in the cause, and not a mere possibility that the defendant is innocent." We have been cited to the case of *State v. Owens*, 79 Mo. 619, as condemning the above instruction because of the use of the word "real." It is sufficient to say of that case, that in the recent cases of *State v. Jones*, 86 Mo. 627, and *State v. Payton*, 90 Mo. 220, it is held that the use of the word "real," in such an instructions was not reversible error. In the case last above cited, the case of the *State v. Owens*, *supra*, is referred to, and it is said of it, "that while the use of the word 'real' was much criticised, the judgment was not reversed on that ground."

The court instructed the jury as to murder in the first degree, and as to manslaughter in the second degree. No exceptions were taken to these instructions, nor is any objection to them urged here, but it is insisted that the court erred in not giving an instruction for murder in the second degree, and we are asked to reverse the judgment for that reason, although no such instruction was asked, and although the failure of the court to give an instruction on that degree of homicide is not assigned as a ground for a new trial in the motion made for that purpose.

This objection makes it necessary to advert to the evidence, which, on the part of the state, tended to show that the deceased was the wife of defendant; that they were married in 1881, had two children, and apparently lived contentedly together till about January,

1886, when they began to find fault with each other, she complaining that he did nothing to support the family, and that she was compelled to work out to support, not only herself and children, but to support him; he complained of her that she would not stay at home, and was too intimate with other men.

The evidence tended further to show that this unpleasantness continued till about the middle of May, 1886, at which time defendant told her that he would cut her throat; that after this, and several days before the tragedy, the deceased left her home and went to her mother's, about one mile from where she had lived with defendant, taking with her the two children, also clothing, etc.; the defendant met her, on the day of the homicide, on her way back to the house where they had lived, to get such of her things as she had left; that they had some words, and went to a police station, where deceased made the request · that an officer be allowed to go with her to the house, as she was afraid defendant would harm her if she went with him alone. The request being refused, she started off with him; that both were seen to enter the house; the door was closed with a slam, and a racket, in the language of a witness, was heard, as if they were racing, or as if one was running after the other, and screams of "murder, murder," from her, were heard six or seven times; that the door soon opened, and deceased came staggering out with three distinct gashes in her neck and throat, from which the blood was running; that defendant came out immediately after her, and going to a well dropped something into it, which was afterwards found to be a razor; that he then went around the house and immediately reappeared with a hatchet in his hand, ran and caught hold of deceased, who, in the meantime, had approached the porch of a house near by, and led or pulled her back towards the house she left, on reaching the door of which she fell, but recovered and made her

way towards the house of a neighbor, but dropped dead in an alley before reaching it; defendant then locked the door of the house, went to the police and said he had fixed his wife and wanted to be locked up; that he told a sergeant of police that he had cut his wife with a knife which he had thrown away, and then got a hatchet and intended to knock her in the head, as he did not like to see her struggle so.

Defendant, who testified in his own behalf, stated that when they got in the house they continued to talk about their trouble and separation, during which she said to him: "I got you dosed and I intend to finish you, too;" and again, "make yourself satisfied; look how you have been all the winter; if you know what is the name of the solid nigger, you would be hard to catch in this town." He further stated that deceased walked into an adjoining room, and returning, said: 'You were out looking for me; I will fix you now;" that their altercation continued a few moments longer, when she struck at him with a razor, which he caught and took from her, and struck her three times with it, cutting her each time; that he then went to the well in the yard, and in lifting the bucket the razor slipped in the well.

If a warrant for any other instruction than murder in the first degree is to be found in the evidence, it must rest on that given by defendant in his own behalf, and we are of the opinion that the trial judge properly held that if the killing occurred under the circumstances detailed by him, that the offence was manslaughter in the second degree, and so instructed the jury, as follows:

"If you believe, and find, from the evidence, that the deceased made an assault with a razor on defendant, and attempted to take his life, or do him great bodily harm therewith, and that, in resisting such attempt, or any other unlawful act on the part of the deceased, after such attempt may have failed, he unnecessarily

took the life of the deceased, you will find him guilty of manslaughter in the second degree, and assess his punishment in the penitentiary not less than three nor more than five years."

Finding no error in the record, the judgment of the criminal court is hereby affirmed. All concur.