THE STATE v. JAMES DUNCAN and GROVER DUNCAN, Appellants.—50 S. W. (2d) 1021.

Division Two, June 10, 1932.

*Shultz & Owen* and *B. M. Lockwood* for appellants.

*Stratton Shartel,* Attorney-General, and *Ray Weightman,* Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Appellants were jointly indicted by the grand jury of Platte County for the larceny of a corn planter, the property of Frank Foster and of the value of $86. Upon trial they were found guilty and their punishment was assessed separately at two years in the State penitentiary. They were sentenced in accordance with the verdict and in due course they appealed. The principal, if not the sole question for our decision is the sufficiency of the evidence to warrant the submission of the case to the jury.

The charge was laid as of April 21, 1930. On that day, Frank Foster, a farmer, living in Platte County just east of the town of Dearborn, left in his field near a public road, a corn planter which he had acquired in trade a few days before. That night, about ten o'clock, one of his sons, Luther Foster, returning home from Dearborn, passed along the road near which the planter had been left in the field. He noticed a truck parked on the road next to his father's field. He thought at the time that it was a truck like his own, a Chevrolet. That was why he noticed it. "Q. Was there anything unusual about the truck you say you saw there in the road that night? A. There was nothing unusual. I noticed it was similar to my truck; that is what made me think of it." The truck was unlighted. There was no one in it. The night was dark and there had been a light rain. The next morning Frank Foster looked over his fields and missed the planter. He went to the spot where he had left it in the corn rows at the close of the planting the day before. Marks in the field, made by the planter, showed that it had been moved to the edge of the field to a point overhanging the public road. Other marks in the public road had been made by the wheels of a truck and led to a point near to the tracks of the planter in the field. The facts caused

Mr. Foster to judge that the truck had been run up in the ditch to the edge of the field and the planter moved to the body of the truck and carted off. About the marks in the field and in the road were the foot prints of three persons. The marks of the wheels of the truck were traced along the road as far as the main public highway and there were lost. A relative of appellants was Mr. Foster's neighbor on the north. The truck might have gone to or past this neighbor's farm but not necessarily.

On June 6, 1930, Jack Burton and Alva Courtney, living near the Fosters in Platte County, were in Andrew County looking for a cow. As they drove along the highway that day, and were passing the farm of appellant, Jim Duncan, near Amazonia in Andrew County, they saw in the field near the barn a corn planter of the same make as the planter which had disappeared from Frank Foster's farm a month and a half before. Foster's farm in Platte County is about twenty miles in one direction from St. Joseph, and Jim Duncan's place in Andrew County is about eight miles from St. Joseph in the opposite direction. Buchanan County, of which St. Joseph is the seat of government, lies between Platte and Andrew Counties. Burton and Courtney notified Frank Foster of the planter which they had seen in Andrew County, and Foster's sons, Edgar and Oren, went to the Duncan farm, found the planter in the field and identified it as their father's.

There was no one home when the Foster boys visited the Duncan farm the first time, but Jim Duncan was there when they returned later with an Andrew County officer and a search warrant. In the direct testimony of Edgar Foster, the following occurred: "Q. What was the conversation that took place there with Jim Duncan at his door? A. We asked if he had a corn planter, I believe.

"Q. What did he say? A. He said that there was not any there.

"Q. Then what did you do? A. We told him we had a search warrant and wanted to look around.

"Q. Did he say anything about that? A. No, sir, he said for us to look."

When the Fosters found and seized the planter, Jim Duncan said that he had borrowed it from his brother, Grover. The planter when seized was in plain view of the public road near the barn. Jim Duncan, in his own behalf, testified that when the visitors arrived they inquired if he had a planter. He answered that he had a John Deere. They said they had a search warrant for an International, and he "told them to go ahead and look for it." At the time of the seizure of the planter under the search warrant, Jim Duncan had been on the farm in Andrew County for ten years. The finding of the planter on Jim Duncan's farm six weeks after it had been taken from Frank Foster's farm, and the conversation between Foster's sons and Jim Duncan made up the State's case against appellant, Jim Duncan.

The case against Grover Duncan rests almost exclusively on the testimony of John W. Coots, Jr., the prosecuting attorney of Platte County, who represented the State at the trial of the appellants. This testimony related to certain admissions of Grover Duncan and also to a Chevrolet truck owned by him. The testimony of Mr. Coots in the nature of admissions by Grover Duncan was that, about six weeks after the theft of the corn planter had been reported, Mr. Coots was in Dearborn in Platte County. James Duncan was then under bond. "Grover Duncan came up to me," testified Mr. Coots, "and said: 'Won't you let James go?' And I said: 'Why?' And he said: 'It was not his corn planter. He didn't have anything to do with it.' -And he said: 'It was my corn planter and I let him borrow it.' I said: 'Where did you get the corn planter?' And he said: 'I bought it from a negro in St. Joe down on Fourth Street one night.' I said: 'What is the negro's name?' He said: 'I never saw him before.' I said: 'Do you know where he is now?' And he said: 'I don't know.'" Grover Duncan, on his own behalf, testified that he bought the planter from a negro named Will Long, living near Elwood, Kansas, for $65 in the farm implement section of Fourth Street, St. Joseph, Missouri, in the day time, while he, Duncan was there to buy a plow. He also testified that, in his conversation with Mr. Coots at Dearborn he told the prosecuting attorney the name and address of Long. Frank Foster, the owner of the stolen planter, called in rebuttal by the State, testified that he was present at the conversation at Dearborn between Grover Duncan and the prosecuting attorney; that Mr. Coots did not inquire the name of the negro from whom Duncan said that he had bought the planter, and that Duncan did not tell the name.

The testimony of Mr. Coots about the truck was as follows: "I observed Grover Duncan driving a motor truck upon two or three occasions, and he left it out in front of the courthouse one time, and I pointed it out to Mr. Ketchum and the Foster boys, who testified a moment ago, and they examined the tires of it." Just when Constable Ketchum and the Foster boys examined the tires of Grover Duncan's truck while it stood in front of the courthouse in Platte City, the seat of Platte County, the record does not directly disclose. But there are strong inferences that they made the examination about the time of the conversation between Prosecutor Coots and Grover Duncan, namely at least six weeks after the planter was taken. Oren Foster looked at the tracks of the truck in the soft clay of the ditch beside the road next to his father's field the day after the planter disappeared and six weeks later he examined in front of the courthouse at Platte City the treads of the tires of the truck which Mr. Coots had pointed out to them as Grover Duncan's. When he was asked by Prosecutor Coots whether he "could identify those truck tires as being the same kind and character as made by the truck that

took the corn planter away," Oren Foster answered: "They looked to be the same." On cross-examination it appeared that the bas's of Oren's identification was that some, if not most Chevrolet trucks have Firestone tires as standard equipment; that the truck marks in the ditch were of Firestone tires and that Duncan's truck, seen six weeks later, had Firestone tires. Constable Ketchum, when asked to "tell the jury how the tread of that truck compared with the track you saw out there," answered: "The same identical track." But beyond the fact that the tires on Duncan's truck were not new tires and were not old tires, Ketchum did not testify to any points of identity. In like manner, Sheriff Pennington, of Platte County, who saw the tracks in the road and also the tires on Duncan's car six weeks later identified them together because the markings in the mud had been made by diamond tread tires of truck size. In all the testimony about the tires and the mud marking there was not any substance or scintilla of evidence of peculiarities or markings, common both to the tires and the tracks, individualizing each and tending to show that the imprints in the road had been made by the tires on Duncan's truck. The testimony in its essence was that the marks in the road were made by Firestone tires and that Duncan's truck, seen six weeks later, was equipped with Firestone tires. There was no evidence of the presence of either one of the appellants in Platte County at or about the time of the theft of the corn planter.

There was testimony tending to support appellant Grover Duncan's defense that he made an agreement in St. Joseph, late in April, 1930, to buy the planter for $65 from Will Long, a colored man whom Duncan had known since the World War. George W. Rogers, a neighbor of the Duncans, was in St. Joseph, the day that Grover Duncan bought the planter from Long. He also saw Long bring the planter in a truck to Duncan's farm a few days later. Rogers aided in unloading the planter and saw Duncan pay for it. Marvin Boling and his wife, Dorothy, residents of St. Joseph, were at the Grover Duncan farm buying butter, milk and eggs, as they had done before, on the day that a large colored man delivered the corn planter. Andrew Cobb and his wife, Cora, neighbors of Grover Duncan, met a colored man on the road, driving a truck in which was a corn planter. The man inquired the way to Duncan's farm and the witnesses directed him. Mrs. Cobb is a sister of the appellants. Preston Gobin, another neighbor, saw a colored man drive out of Grover Duncan's place. All these witnesses fixed the time of these incidents in the latter part of April, 1930. They described the negro as large and of light color, and they said he had a white boy with him.

■ I. First as to the order of the trial court overruling appellants' demurrer to the evidence. It is our opinion that the State failed to make a submissible case and that the court should have sustained the demurrer. It is true that the State proved by substantial evidence

that the corn planter was stolen from Frank Foster in Platte County; that it was of the value of $86 and that six weeks later it was found on the farm of appellant James Duncan in Andrew County. But a presumption of guilt arising from possession of recently stolen property no longer may be indulged. [State v. Swearens, 294 Mo. 139, 241 S. W. 934.] Besides, possession of the planter by Jim Duncan six weeks after the theft could hardly be called recent, and his explanation that he had borrowed it from his brother Grover was not disputed or controverted. In fact this explanation was brought out by the State in the direct examination of Edgar Foster in the State's case in chief. Therefore Jim Duncan's explanation should destroy as to him any evidential value which the fact of possession otherwise might have.

██ The case against Grover Duncan rests upon the truck tire tracks in the road next to Frank Foster field and the attempted comparison six weeks later by several witnesses of those tracks as remembered by them with the treads of the tires upon a truck seen in Platte City. The comparison established the fact that the tire markings in the road were made by tires of the same make as those upon Duncan's truck. That is not enough to warrant a jury in finding a defendant guilty of the felony of grand larceny. It is true that the truck was of the same make as was the truck which Luther Foster saw parked in the road on the night of the theft of the planter. But Luther testified that there was nothing unusual about that truck. In these days of quantity production and distribution and of standard and uniform designs of tires and of trucks, mere sameness of makes cannot tend to prove that a vehicle seen in Platte City was used six weeks before in the commission of a crime elsewhere in the same county.

As was said by this court in State v. Morney, 196 Mo. 43, 93 S. W. 1117, l. c. 1118: "When a conviction for felony rests altogether upon circumstantial evidence, as in this case, 'the circumstances proved must be consistent with each other, consistent with the hypothesis that the accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent, and with every other rational hypothesis except that of guilt.' [12 Cyc., 488, and authorities cited.]" Measured by these rules, the case made by the State did not warrant or support the submission to the jury of the issue of the guilt of either of the appellants. "The commission of a criminal offense implies, of course, the presence of the defendant at the necessary time and place." [State v. Howell, 100 Mo. 628, 14 S. W. 4, l. c. 15.] There was no evidence, direct or circumstantial, from which the jury might infer the presence of either of the appellants in Platte County at or near the time of the theft of Frank Foster's corn planter.

■ II. Section 3763, Revised Statutes Missouri 1929, provides that if, upon appeal by a convicted defendant in a criminal case, "the judgment be reversed, the Supreme Court shall direct a new trial, or that defendant be absolutely discharged, according to the circumstances of the case." In the instant case the evidence, such as it was, produced by the State was wholly circumstantial. Appellants presented a strong defense. According to the circumstances of this case we do not believe that the ends of justice would be best served by directing a new trial. It is accordingly ordered that the judgment of the trial court be reversed and the appellants discharged. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.