STATE v. JOHN TOMLINSON, Appellant.—No. 38706.—177 S. W. (2d) 493.

Division Two, February 7, 1944.

392

*Phillip J. Fowler, Gray Snyder* and *Fuller, Fuller & Ely* for appellant.

*Roy McKittrick,* Attorney General, and *L. I. Morris,* Assistant Attorney General, for respondent.

■ TIPTON, J.—An information was filed in the circuit court of Lewis County, Missouri, charging the appellant with larceny of a certain blue-roan cow belonging to one Vadie Baker, which was valued at seventy-five dollars. On a change of venue, the case was sent to the circuit court of Adair County, Missouri, where the appellant was found guilty as charged and his punishment assessed at two years in the State penitentiary.

Is the evidence sufficient to sustain the verdict? That is the only question presented by the appellant. We will adopt the statement of facts from the appellant's brief without quotation marks. It is as follows:

Vadie Baker, the prosecuting witness in the case, is a colored man who owns a very large farm situated on the highway between Monticello and Lewistown in Lewis County. His home is on the north side of the highway, and he has certain cattle pens located on the same side of the highway and closely adjacent to his home, which are reached by a driveway which passes directly by the house. He also has a pasture, mentioned in the evidence, in this state, located on the south side of the highway. Baker is a cattle trader, dealing in large numbers of cattle at all times.

Tomlinson, the defendant, is a white man, also a farmer in Lewis County, and he lives and has his farm about a mile and a half southeast of Baker's place. However, to go from the Baker place to the Tomlinson place by road, it is necessary either to go through Monticello or to take another road to the south and west; either road being several miles long.

Sometime before the 7th day of May, 1942, Baker had purchased certain cattle from a man in Adair County. Among others, was the cow here in question, a cross between a short horn and a poled angus which produced what is colloquially known among farmers as a blue-roan. She weighed about a thousand pounds. On the afternoon of the 7th of May, Baker had this cow, with a number of black angus ■ cows, in the pens near his house. He is not definite as to whether the total number of cattle in the group was 20 or 21, but he says he knew at the time the exact number. On the afternoon of the 7th he showed these cattle to one Delmar Smith, a white man who resides at Lewistown. Smith was not then ready to buy, but suggested that he keep the cattle in the pen over night and that he would let him know further in the morning. The next morning Baker directed his hired hands to take the cattle across the road to the south pasture. He did not have occasion to see them again or count them until

Saturday, the 9th of May, two days after he had shown them to Smith. At that time he noticed that the blue-roan cow was gone. Neither of the hired hands who had charge of taking the cattle across the road testified.

On May 8th, one Givens Stephenson had occasion to go from his home to a distant field located in the same general neighborhood as the Tomlinson place. That morning he saw a blue-roan cow tied to a tree in some woods near the South Fabius River. The place where he saw the cow was not on the Tomlinson land, and, in fact, was across the Fabius from the Tomlinson place. Givens Stephenson did not purport to identify this as the same cow which Baker had lost. He described it only as a blue-roan cow. He said that the ground around the place where the cow was standing, for some distance was trampled down. If the cow tied at that point were a very nervous animal, she could have so trampled the ground in a comparatively short time, but unless she were very nervous, the indications were that she had been there some time.

In this connection it is to be noted that the family of Baker had been home in their house all during the night of May 7th and the morning of May 8th; that on May 9th, when Baker noticed that the cow was gone, he and Sheriff Alex Stephenson of Lewis County, made a careful examination of the ground around the gates leading to the cattle pen in which the cattle had been kept on the night of the 7th and found no signs of anyone having driven in or out of these gates. The ground, however, was hard.

One Elmer Smith testified for the State that he saw a blue-roan cow in the defendant's pasture, that this cow got through the fence into his oat field and he warned the defendant to take her away. He says that this was on a Saturday, and he guessed that it was on May 9th. The witness had had considerable trouble with the defendant over a period of time about cattle getting back and forth through a fence which was apparently in none too good repair. He admitted that he had a very considerable feeling against the defendant. Something over a month later, on June 20th, [As we read this record, the date was May 20th] some of the defendant's cattle again got on to Elmer Smith's land, and he caused Attorney Walter Hilbert to prepare a notice to serve on the defendant that he would shut up the cattle and hold them for damages. Sheriff Alex Stephenson, who, in the meantime, had driven over a good deal of the county looking for the cow, went down to the Tomlinson place to serve this notice. He took with him Smith and one of Baker's hired hands. On arriving at the place they found a blue-roan cow in the pasture. After serving the notice on the defendant, the Sheriff questioned him about the cow. He said that it was his cow, that he had traded for her with another one of Baker's hired hands, that he was to trade a Jersey cow for this one; that the blue-roan cow had been brought to his place in the

nighttime by truck, and that the man with whom he had traded had not gone to get his Jersey cow as yet.

This was all the evidence in the case.

■ In this state the law is well settled that while recent possession of stolen property is not proof of guilt as a matter of law, it is sufficient to submit the case to the jury. State v. Curley, 142 S. W. (2d) 34; State v. Slusher, 301 Mo. 285, 256 S. W. (2d) 817; State v. Swarens, 294 Mo. 139, 241 S. W. 934; State v. Kennon, 123 S. W. (2d) 46; State v. Deckard, 37 S. W. (2d) 414.

"The reasonableness and credibility of the explanation given by the accused as to the manner in which he acquired possession of the stolen property is a question of fact to be considered by the jury, or the judge before whom the case is tried without a jury, in connection with other facts and circumstances in evidence. The improbability of the explanation does not remove it from his or their consideration; nor on the other hand, does its plausibility, although uncontradicted by the state, require an acquittal." 36 C. J. 921, Sec. 528. The above quotation was approved by this court in the cases of State ■ v. McLane, 55 S. W. (2d) 956, l. c. 957; State v. Tisher, 119 S. W. (2d) 212, l. c. 214.

■ The blue-roan cow was found in the possession of the appellant. In fact, he admitted to the sheriff of Lewis County his possession, but he stated that he traded for this cow with a hired hand of Vadie Baker; that he gave a jersey cow in exchange for the stolen cow. This explanation was a matter for the jury. The jury could have believed it or not, as they saw fit. The jury did not believe the accused's explanation and they had a right to infer from such possession that the appellant was guilty. The possession of the cow by the appellant was recent; it was missed by Baker on May 8, 1942, and found in the possession of appellant on May 20th. Since appellant still had possession of both cows, and the further fact that he traded it with a hired hand of Baker, who was a large dealer in live stock, are circumstances that would tend to cause the jury to disbelieve the appellant's explanation to the Sheriff.

Appellant strongly relies upon our case of State v. Duncan, 330 Mo. 656, 50 S. W. (2d) 1021. We have carefully examined this case, but have come to the conclusion that that case is not in harmony with our other cases involving similar facts.

From what we have said, it follows that the judgment of the trial court should be affirmed. All concur.