STATE v. ROY ELBERT DENISON, Appellant.—No. 38862.—178 S. W. (2d) 449.

Division Two, March 6, 1944.

*Albert S. Ennis* for appellant.

*Roy McKittrick,* Attorney General, and *B. Richard Creech,* Assistant Attorney General, for respondent.

 ELLISON, J.—The appellant was convicted of grand larceny in the circuit court of Jefferson county and his punishment assessed at two years imprisonment in the penitentiary. There were 21 assignments of error in his motion for new trial in the circuit court. Some of these are too indefinite to meet the requirements of the new trial statute, Sec. 4125.* In his brief he makes some assignments of error which were not presented in the motion. We shall presently take up in order all the assignments on appeal that are open to review. But first, we state the evidence.

The prosecuting witness, J. W. Harbour, operated a retail lumber yard at Herculaneum in Jefferson county. On or about October 18, 1941, the office was burglarized by breaking the glass in a side door and turning the lock inside. A considerable amount of merchandise and office equipment was stolen, the latter including a second-hand out-of-order Burroughs adding machine which he had recently purchased for $10, and a second-hand Woodstock typewriter bought a few weeks before for $15. On February 20, 1942, the appellant's premises at 2425 north Vandeventer Avenue in the City of St. Louis were searched and the adding machine was found there. Appellant was arrested that day. About the same time the officers located the typewriter in the home of Miss Wilma Lawson, 4046 Manchester Avenue, St. Louis. She was a life-long acquaintance of appellant and had bought the typewriter from him for $20 a few days before Christmas. The information filed by the prosecuting attorney charged appellant with both burglary and larceny, but the latter charge covered only the adding machine and typewriter—not the stolen merchandise or other office equipment, which never was found so far as this record shows.

On his premises at the Vandeventer Avenue address the appellant and his wife conducted a confectionery, soft drink, lunch and tobacco store on the first floor and resided on the second floor. There was an old woodshed behind the store building in which officer O'Connor found the adding machine. There is no evidence as to how the police came to search the premises, or how or why they had previously connected him with the burglary and larceny. There was no direct evidence that he had ever been at the scene of the crime. Efforts were made to discover fingerprints about the lumber yard office but none could be found that were legible, though some prints of rubber

*All references to sections of our Statutes are to R. S. Mo., 1939, and same numbers in Mo., Stat. Ann., unless otherwise noted.

heels were noticed but these were not shown to have been connected with the appellant. The foregoing constituted the State's whole showing on its case in chief. The appellant asked an instruction in the nature of a demurrer to the evidence which the court refused to give.

The defense presented as a witness a sixteen year old boy named Herschel Colyer. He had been a clerk in the appellant's store for about a year, including the period between December, 1941 and February, 1942. His testimony was that the week before Christmas, 1941, a "guy" (whom he later described) came in bringing the typewriter and adding machine, one at a time, and his employer went to the cash register and gave the man some bills (currency). He identified both machines (then before the jury) and said they were left in the "living room." A couple of days later the typewriter was gone. But the adding machine remained two or three weeks— on cross-examination he estimated the time as a "couple of months." The witness said the appellant tried to fix the machine but could not make it work. He thought it was then sold; but later heard "them" (meaning the appellant and his wife) say "the law took it."

Appellant's wife testified they had been operating the confectionery for two years. She remembered the typewriter and adding machine were brought to the store just before Christmas, although she wasn't there at the time. She and her husband each worked there eight hours each day, and they usually closed up about 11 p. m. or midnight. In the middle of October, 1941, her husband had the night shift. She could not recall that he had been away from home at night during that month. He rarely left except on errands or when he went to "the tavern" to see somebody. When he was away she looked after the business. When the typewriter and adding machine were brought to the store they were placed on a table in the middle of the kitchen behind the salesroom where they were in plain sight. The typewriter was there more than a week; the adding machine for a longer time, until she asked her husband to get it out of the way and he put it in the shed back of the building. About two weeks later the police took it.

On rebuttal police officer O'Connor said he had seen the appellant numerous times at Lang's Tavern, 2400 north Vandeventer (appellant's store was at 2425) and at another place on Tower Grove Avenue called Shaw's Tavern. Some of these occasions were in October, 1941. The officer was on the evening watch that month. He didn't remember ever seeing the 16 year old clerk Colyer at the tavern, but admitted he had been there only a few times before making the arrest in February, 1942. The appellant did not testify, and ineffectually renewed his demurrer to the evidence at the close of the whole case. The jury found in favor of appellant on the burglary charge, but convicted him on the larceny charge.

Appellant's first assignment is that the trial court erred in overruling his demurrers to the evidence at the close of the State's case and the whole case, grounded on the contention that there was no substantial evidence to support a verdict of guilty. In this connection it is to be remembered that whether or not the first demurrer should have been sustained, yet, since appellant did not stand on it but presented evidence in his own behalf, the trial court was bound to take the latter evidence into consideration insofar as it helped the State's case, in ruling on the second demurrer at the close of the whole case. State v. Barr, 336 Mo. 300, 302(1), 78 S. W. (2d) 104, 105(1).

Appellant's specific contentions on this assignment are that: (1) there was no direct proof of his guilt, or even that he had been in Jefferson county where the larceny was committed, before his arrest; (2) the mere finding of the adding machine in the shed on appellant's premises "five months" after it had been stolen, was insufficient to support a substantial inference that he was the thief. On this latter contention, appellant correctly says that under State v. Swarens, 294 Mo. 139, 150, 241 S. W. 934, 937, and subsequent decisions, no such inference can be drawn unless the possession was recent, exclusive and unexplained; and he argues neither of these three essentials was shown.

On the first of these contentions, concerning the recency of his possession, appellant is mistaken in saying the proof showed he got the adding machine five months before the larceny. The date of the larceny was about October 18, 1941; and the date of his arrest, when the machine was found in his possession, was February 20, 1942, which was only four ▇▇▇ months and two days later. But it must not be forgotten that appellant's own evidence, through the testimony of his wife and clerk, Colyer, was that he had had both the adding machine and typewriter since the week before Christmas, which would be just about two months after they were stolen.

Appellant cites State v. Duncan, 330 Mo. 656, 660, 50 S. W. (2d) 1021, 1023(2), which ruled that possession by a farmer of a corn planter about 28 miles from where it had been stolen six weeks earlier, "could hardly be called recent." He refers us also to another case, State v. Belcher, 136 Mo. 135, 138, 37 S. W. 800, 801(2), where stolen merchandise consisting of tobacco, overalls, shirtings and shoes was found four months later, part in the home of the defendant's mother and part in the home of one Edwards. Defendant was wearing a pair of the overalls and shoes, but said he bought them from his brother. The brother had confessed and the man Edwards had been convicted; and both of them had exculpated him. The decision said that "in the peculiar circumstances of the case the possession was not recent." The third case cited by appellant is State v. Lipschitz (Mo. Div. 2), 6 S. W. (2d) 900, 901(2) where possession of stolen

merchandise samples 17 days after the larceny was affirmatively held to be recent. Appellant's brief winds up on this point with the generalization that "most of the cases in this state have held recent possession to range from one to seventeen days."

But we are unable to hold as a matter of law that appellant's possession of the stolen adding machine and typewriter two months after the larceny was too remote to permit of the application of the rule stated in the third preceding paragraph. In a very recent decision, State v. Tomlinson, No. 38706, 352 Mo. 391, 177 S. W. (2d) 493, we stated that the Duncan case, supra, was not in harmony with our other decisions based on similar facts. And State v. Jenkins (Mo. Div. 2), 213 S. W. 796, 799 (9), ruled: "What is meant by 'recent possession' is to be determined from the facts in each particular case. What may be regarded as recent in one case may not be so regarded in another. There is no definite rule, therefore, by which it may be determined. It varies under the facts in the particular case from two years to a period of a few days." In this Jenkins case a stolen hog was missed "about the first of May" and was found to have been in the possession of the defendant "sometime in June." See also: State v. Wyre (Mo. Div. 2), 87 S. W. (2d) 171, 173 (2); 36 C. J., sec. 428, p. 870; 32 Am. Jur., sec. 142, p. 1054.

In the texts just cited it is stated that the question of recency, in a legal sense, will depend somewhat on whether the property ordinarily would be salable or pass readily from hand to hand. If not, the inculpating period of time will be extended. Another test, it seems to us, is whether the property is such as the accused would naturally want and come by honestly. Here the appellant was found in possession of the adding machine in a woodshed behind his store. He had sold the typewriter to an old acquaintance a short time after he bought it (according to the testimony of his two witnesses) and about two months after both machines had been stolen from the owner. There is no evidence that appellant himself had any use for the machines except to dispose of them for profit. He was not in that business, but the confectionery business. Surely that was one of the circumstances calling for explanation. We hold there was no failure of proof on the part of the State as regards this issue of recency.

■ On the second contention—that appellant's possession of the adding machine and typewriter was not exclusive. He refers us to two Missouri decisions, cited in the margin.[1] In the Belcher case the merchandise was found in the home of the defendant's mother and there was no evidence indicating he had any possession of it other than such as was shared by the family in common. In the Drew case

[1]State v. Belcher, supra, 136 Mo. l. c. 137, 37 S. W. l. c. 800-801; State v. Drew, 179 Mo. 315, 320-3, 78 S. W. 594, 596, 101 Am. St. Rep. 474; See also State v. Wyre, supra, 87 S. W. (2d) l. c. 173; and 32 Am. Jur. sec. 141, p. 1054; 36 C. J. secs. 429-431, pp. 871, 873.

a piece of stolen dress goods was found in the defendant's home in a locked trunk, the key to which was produced by his daughter and wife, the latter unlocking the trunk when the search warrant was served. There was no evidence that the defendant knew they had the cloth. The decision held this proof insufficient, declaring that to support an incriminating presumption the possession of the defendant must be more than constructive; it must be an *actual, conscious* possession. Both these decisions are authority against appellant instead of for him. His own evidence is that he was in exclusive control of both machines; that he sold the typewriter; and that he tried to fix the adding machine, finally putting it in the woodshed at his wife's request to get it out of her way in the kitchen. Certainly he was in actual, conscious possession of both.

 On the third contention—with reference to the requirement that before an incriminating inference can be drawn, the defendant's possession must be unexplained. Appellant insists his possession *was* explained by his wife and the young clerk, Colyer, both of whom testified he bought the machines. In other words, it seems to be appellant's theory that if he *presents* an explanation then the jury cannot draw an unfavorable inference from his possession, whether they believe his explanation or not. But this is not the law. If it were, the rule of evidence under discussion would be useless. In almost every such case *some* explanation is offered by the accused. The doctrine in this State and elsewhere is that the credibility of the explanation is a question of fact for the jury; and if the jury disbelieves it the case stands with his possession *un*explained.[2]

Indeed his position is worsened, for if the *facts* are consistent with the defendant's innocence, neither he nor his witnesses need lie about them. State v. Enochs, 339 Mo. 953, 957, 98 S. W. (2d) 685, 687. Hence, if the jury in this case deemed false the testimony that appellant *bought* the adding machine and typewriter from an unnamed person shortly before Christmas, they were at liberty to conclude the opposite, that he did not buy them—this on the principle governing the familiar instruction on the credibility of witnesses, considered in State v. Willard, 346 Mo. 773, 781 (6), 142 S. W. (2d) 1046, 1051.

There were reasons why the jury might have thought the appellant could have given a fuller explanation than was made—and this without testifying, himself—if the facts stated were true. For instance the clerk, Colyer, testified as an eyewitness to appellant's purchase of the machines and described the man who sold them. But absolutely no effort was made by the defense, so far as the record shows, to locate and produce the vendor as a witness or to account for his absence. And there was no effort to trace any intermediate ownership of the

[2] 36 C. J. sec. 434, p. 876, sec. 528, p. 921; 32 Am. Jur. sec. 143, p. 1055; State v. Nicoletti, 344 Mo. 86, 91 (1), 125 S. W. (2d) 33, 35; State v. Tomlinson, supra (No. 38706, 352 Mo. 391, 177 S. W. (2d) 493).

machines by their serial numbers, although the evidence shows the adding machine, at least, had such a number.

Another more general contention made by appellant is that where a large amount of property has been recently stolen and only a small part thereof is found in the possession of the accused, the rule of evidence permitting the inference that he was the thief does not apply. In this case the property stolen consisted not only of the adding machine and typewriter, but also of $100 worth of carpenters tools, 10 dozen paint brushes, 8 or 10 dozen files, 10 or 12 dozen rulers, a dozen flash lights, and a 16 inch electric fan, none of which were ever found. Appellant argues this separable property might have found its way into the possession of a hundred or more persons; and that under the doctrine relied on by the State conflicting inferences would be allowable that *each* of these persons had stolen *all* of it. Our answer is, first, that appellant is not confronted with any such dilemma. He is not charged with stealing any property except that traced to his possession; nor has it been shown that any of the other property was found in the possession of anyone else. But if such a question were in the case it need only be pointed out that for a long time in this State the general rule has been contrary to appellant's contention,[3] as regards the property he is charged with stealing.

What has been said disposes of appellant's demurrers to the evidence, except as to what might be called two collateral contentions. One is that under the evidence the appellant, if guilty at all, was guilty of both the burglary and the larceny; and since the jury acquitted him of the burglary, his conviction of larceny cannot stand. On this point appellant cites State v. Bates, 182 Mo. 70, 73(I), 81 S. W. 408, 409, where in similar circumstances the opinion said the verdict of guilty of larceny alone was not *illogical*, because the prosecuting dentist had testified he *might* have left his office door open—in which event the crime could only have been larceny. But we do not regard that decision as authority for the contention that where the evidence shows *both* burglary and larceny, a defendant so charged can complain if he is convicted of larceny only. The inference of guilt arising from the recent possession of property stolen in a burglary extends to both crimes;[4] and under the evidence appellant might have been convicted of both. He cannot claim reversible error because the jury let him off on one. Sec. 4845; State v. Owens, supra, 79 Mo. l. c. 623.

[3]State v. Barker, 64 Mo. 282, 285; State v. Davis, 73 Mo. 129, 133; State v. Owens, 79 Mo. 619, 625; State v. Owsley, 111 Mo. 450, 453-4(1), 20 S. W. 194; State v. Blue, 136 Mo. 41, 45(2), 37 S. W. 796; State v. Weaver (Mo., Div. 2), 56 S. W. (2d) 25, 26(2); State v. Sagerser (Mo., Div. 2) 84 S. W. (2d) 918, 922(2).

[4]State v. Owens, supra, 79 Mo. l. c. 624-5 (III); State v. Yandle, 166 Mo. 589, 594(II), 66 S. W. 532, 533; State v. Armstrong, 170 Mo. 406, 408, 70 S. W. 874, 875.

■ The other contention is that the State's evidence was so weak it must be concluded the jury convicted him of the larceny because *he* did not take the stand and explain how he got the stolen machines. This, says appellant, was a violation of his rights under Sec. 23, Art. II of the State Constitution and Sec. 4082 of our statutes, which latter provides such failure to testify "shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury." The question presented is whether this constitutional and statutory right is violated by enforcing the unexplained-recent-possession rule of evidence, when the defendant has not testified and the State's evidence is weak.

The rule is founded on *reason,* and that actually cannot be excluded from the human mind. Our cases have followed a vacillating course in deciding whether the jury should be instructed about their duty under the statute to ignore the defendant's failure to testify. The conclusion reached seems to be that the statute forbids the giving of such an instruction, even on the defendant's request, because the instruction, itself, would amount to a comment on his failure to testify; or at least that is not error to refuse the instruction.[5] In consequence, our established practice is rigidly to refrain throughout the trial from any reference to the defendant's failure to take the witness stand. The jury simply are not informed about the requirements of the Constitution and statute. Usually the defendant prefers adherence to that course. It was followed in this case. And since we may start with the basic premise that the evidence was sufficient to take the case to the jury without the appellant's testimony, we think he cannot complain because he thinks the jury may or *must* have been influenced by his failure to take the stand. If that were the law there would be no way to submit a close case when the defendant had not testified.

■ Another assignment of error is that the court failed to instruct on petit larceny. The State's instruction No. 3 told the jury they might convict the defendant of both burglary and larceny, or either. They did convict him of grand larceny only. The information duly charged the stolen adding machine and typewriter were of the value of $100. But there was no instruction informing the jury they could not convict him of grand larceny alone unless they found the value of the stolen property was $30 or more—as required by Sec. 4456. The evidence on that question was close at best. The prosecuting witness testified he paid $10 for the adding machine and $15 for the typewriter when he bought them. Miss Lawson said she paid appellant $20 for the typewriter. Obviously, the jury might well have found the value

[5]State v. Robinson, 117 Mo. 649, 663(V), 23 S. W. 1066, 1070; State v. DeWitt, 186 Mo. 61, 65(IV), 84 S. W. 956, 957; State v. Taylor, 261 Mo. 210, 227(IV), 168 S. W. 1191, 1196; State v. Long, 324 Mo. 205, 213(IX), 22 S. W. (2d) 809, 813.

of both machines was less than $30. Under Sec. 4070(4) it was, therefore, patent error to omit the instruction on that part of the law of the case. State v. Enochs, supra, 339 Mo. l. c. 958(II), 98 S. W. (2d) l. c. 987(II).

But that error was not assigned in the motion for new trial. Appellant says this was unnecessary, citing State v. Conway, 241 Mo. 271, 293, 145 S. W. 441, 448(12). That case ruled that if a defendant desired to preserve for appellate review the ▮ point that the lower court had failed to instruct on all the law of the case, ordinarily his motion for new trial should definitely point out the proposition of law which the instructions failed to cover. But then the opinion went on to say that if the appellate court considers the omission prejudiced the defendant's fundamental rights and worked injustice by influencing the jury to render a verdict different from that which they would have returned in the absence of such error, then the appellate court will grant a new trial although the question was presented on appeal for the first time. We are unable to find that the Conway case has ever been followed on that holding. And since the amendment of Sec. 4125 in 1925, it has been uniformly ruled that the point must be specifically saved in the motion for new trial. State v. Bagby, 338 Mo. 951, 966, 93 S. W. (2d) 241, 249(18) ; State v. Powers, 350 Mo. 942, 944, 169 S. W. (2d) 377, 378(3). The necessity of such an assignment on the precise ground urged here (failure to instruct on petit larceny) was noticed in State v. Enochs (Mo., Div. 2), 339 Mo. 953, 98 S. W. (2d) 689, 690.

Another assignment attacks the State's instruction No 1, which submitted the question whether appellant "either acting alone or in company with another" broke into and entered the lumber yard office. The challenge is that the instruction runs on the theory of conspiracy or joint action, when there is no evidence whatever that appellant was acting with, by or through another. We need not inquire whether this was error under such cases as State v. Simpson (Mo., Div. 2), 237 S. W. 748, 749(7). For the instruction was on the burglary only, and appellant was acquitted of that charge. The same is true of another complaint made by appellant with respect to the same instruction, namely, that it did not correctly define what constitutes "breaking" into a building.

Another assignment complains of the giving for the State of Instruction No. 5, which read as follows: "The Court instructs the jury that the possession of stolen goods creates no presumption of guilt of the theft and in this case you are instructed that the possession by Roy Elbert Denison, if you so find, of a part of the goods stolen in the burglary of the Harbour Lumber Yard creates no presumption that he was present at, or participated in, the burglary and larceny charged. But, his possession of part of the stolen goods, if you so find, is a circumstance which, if not explained, you may take into con-

sideration, together with other circumstances, in arriving at his guilt or innocence of the crime charged.''

The errors charged are that the instruction was bad because: (1) it failed to require the appellant's possession to be *recent*; (2) it *assumed* his possession was recent; (3) and it was a comment on the evidence. We think this assignment is well founded for these reasons and also because the instruction assumed the property had been stolen. In jurisdictions where such instructions can be given at all, the question of recency is for the jury unless the possession was so close to or remote from the larceny that reasonable minds could not differ on it; in which latter event only can the court rule on the question as a matter of law. 36 C. J., sec. 568, p. 941.

Under the evidence in this case most favorable to the State the appellant's possession postdated the larceny about two months. In State v. Plant, 209 Mo. 307, 315, 107 S. W. 1076, 1077(3), an instruction was declared erroneous which assumed the recency of the defendant's possession when it followed the larceny by the same period of two months. There, the larceny occurred on October 18 and the stolen property was in the defendant's possession on December 18. The opinion said the instruction should not have excluded ''such interval of time from the consideration of the jury in passing upon the question of recent possession.'' So, also, in the Swarens case, supra, 294 Mo. l. c. 153, 241 S. W. l. c. 938-9, the majority opinion of five of the judges en banc quoted with approval from a Nevada case which said: ''It is the province of the jury to determine whether the possession is recent enough to raise the presumption of guilt.''

But the more comprehensive objection to the instruction is that it singles out and comments upon the fact of such possession. Prior to the decision of the Swarens case the unexplained possession of recently stolen property raised a legal presumption of fact that the possessor was the thief. Hence it was the practice to instruct the jury on that presumption. But the Swarens case in overturning the doctrine, declared such possession was merely an inculpating evidentiary circumstance and that it was improper for the court to ''comment on the evidence, either in instructions or otherwise.'' [294 Mo. l. c. 155 (II), 241 S. W. l. c. 939(4).] Contemporary and subsequent decisions have all recognized the Swarens case denounced such instructions as improper comments on the evidence.[6]

It is true that after the giving of the State's instruction No. 5 and appellant had excepted thereto, he asked and obtained an instruction No. 6, which told the jury the possession of stolen goods creates no

[6]State v. Tracy, 294 Mo. 372, 387, 243 S. W. 173, 177; State v. Barker, 296 Mo. 51, 57(III), 246 S. W. 909, 911; Hartman v. Hartman, 314 Mo. 305, 311, 284 S. W. 488, 489(2); State v. Galbraith, 330 Mo. 801, 804, 50 S. W. (2d) 1035, 1036(3); State v. Shelby, 333 Mo. 1036, 1051, 64 S. W. (2d) 269, 275; State v. Nibarger, 339 Mo. 937, 942(4), 98 S. W. (2d) 625, 628(5).

584

presumption of guilt, and did not in this case as against him, if they found he had such possession of part of the goods. But it is our view that this did not waive or cure the error in the giving of the State's instruction, which went further and told the jury such possession was a circumstance to be considered by them.

Only one other assignment of error need be noticed, this because it may recur in the event of another trial. Appellant's counsel endeavored to prove on cross-examination of the police officer who made the arrest, that at that time appellant stated he had recently bought the adding machine and typewriter from a man whose first name was Frank. And an effort to elicit similar testimony was made in cross-examination of Miss Lawson, to whom appellant had sold the typewriter. This was followed up by an offer of proof in both instances. The evidence was not offered on the theory that it was *part* of a conversation between the witness and appellant, for the State had not proven any such conversations. The proffered testimony was excluded on objection because it was self-serving. It was that, clearly. But appellant seems to have the idea that since the rule of evidence under consideration throughout this opinion *calls* for some explanation by the accused of his possession of recently stolen property; and since under the Constitution and Sec. 4082 he, himself, does not have to testify; therefore his extrajudicial self-serving declarations may be proven. There is no such law.

For the error noted, in giving the State's instruction No. 5, the judgment is reversed and the cause remanded. All concur.