**STATE of Missouri, Respondent,**

**v.**

**William Elmer KNICKER, Appellant.**

No. 48852.

Supreme Court of Missouri,

Division No. 1.

March 11, 1963.

Motion for Rehearing and for Transfer to Court En Banc Denied

April 8, 1963.

William Elmer Knicker, appellant, pro se.

Thomas F. Eagleton, Atty. Gen., John H. Denman, Asst. Atty. Gen., Jefferson City, for respondent.

HOLLINGSWORTH, Judge.

Defendant, William Elmer Knicker, and his brother, Albert Frederick Knicker, were jointly charged with the crimes of burglary in the second degree of and stealing from the drug store of Grover C. Finley in the City of St. Louis certain property of the value of at least fifty dollars. The information invoked the provisions of the habitual criminal act and alleged that each had been priorly convicted of certain felonies. After both had pleaded not guilty,

this defendant, William Elmer Knicker, was granted a severance. Trial of that case to a jury resulted in a verdict finding him guilty of stealing property of a value of at least fifty dollars and not guilty of burglary. After hearing evidence out of the presence of the jury, the trial court found that he had been priorly convicted of three felonies and determined that he be committed to the Department of Corrections for imprisonment for a term of ten years. Following hearing and overruling of his motion for new trial, he was granted allocution and, the court finding that he had failed to show legal cause why judgment should not be pronounced as assessed by the court, he was adjudged guilty and sentenced to the term of imprisonment assessed by the trial court. He appealed, following which counsel who had represented him and was present at all stages of the trial and after trial proceedings, by leave of court, withdrew from further representation of him. Defendant has filed in this court a brief pro se. We shall make use of it to the extent of the errors properly assigned in the motion for new trial. S.Ct. Rule 27.20, V.A.M.R.

The evidence adduced in behalf of the State warranted a finding of the following facts. Grover C. Finley, a registered pharmacist, was the owner and operator of a drug store located at 5616 Delmar Avenue. His son, Jack Finley, was associated with him in the business. On Sunday afternoon, August 14, 1960, Jack was at the store for about half an hour. Upon leaving, he checked the two entrance doors, front and rear, and saw that the store was securely locked. At that time an iron safe weighing about 300 pounds was in the rear of the store. In the safe were certain personal papers, nine rolls of pennies, one roll of dimes, "possibly" a roll of nickels and other silver coins, all of which money totalled approximately thirty dollars. There were also narcotics and other drugs in the safe of approximate value of $18.00. The money, narcotics and other drugs belonged to Grover C. Finley. There were also

in the safe thirty dollars in money orders of the Consumers Money Order Company which had been placed in the care and custody of the Finley Drug Store. Jack Finley described these money orders as "cash," "folding money," "paper money [belonging] to Consumers Money Order Company." Grover C. Finley described them as "cash—four or five money orders."

About 3:15 on Monday morning, August 15th, Patrolman Raymond Auld of the St. Louis Metropolitan Police Department "tried" the doors of the drug store and found them secure, back and front. When Jack Finley came to the store later that morning, he observed that the rear door was broken open, its lock was broken and the iron safe and its contents had been stolen from the store.

About 11 o'clock that morning, police detectives O'Connell and Harmon began surveillance of a two-door, grey 1954 Ford automobile, which they were told was the property of defendant's brother, Albert, and which was parked near Seventh and Lynch Streets. After watching the car for about one and one-half hours, Harmon called the police station and police officers Molloy and Spiess came out to Seventh and Lynch. O'Connell and Molloy investigated the vicinity for about 30 to 45 minutes, during which time Harmon and Spiess maintained surveillance of the car. The latter two officers saw three men approach the car from the direction of an alley. As these men approached the car, Spiess recognized defendant and his brother, Albert, both of whom he knew. He did not know the third man, later identified as Edward Stuckmeyer. As the three men approached the car, both officers saw defendant carrying a brown paper bag which they saw him place inside the car through an open window on the right side of the car. The officers thereupon arrested defendant, his brother, Albert, and Stuckmeyer. They then searched the car and found in the right front seat the brown paper bag which they had seen defendant place inside the car. In that bag, which was the only bag in the car, they found bottles with labels bearing the names of opium, cocaine and other narcotics, approximately $31.00 in silver, consisting of nine rolls of pennies, one roll of dimes, one roll of nickels, about 68 quarters and other loose coins. These were initialed and placed in a box by Spiess. Defendant and Albert were taken to the police station.

Later that afternoon, O'Connell and Harmon went out to the "foot" of Branch Street, where they found the stolen safe. It had been broken open and the contents removed. A hoist and tow truck were used to take it to the police laboratory. The safe so found and the articles in the brown sack in the right front seat of the car were identified by the Finleys as the safe stolen from the store and some of the contents of that safe when stolen. Later, the same afternoon, defendant, Albert and Stuckmeyer were taken singly into the police laboratory, where debris from their clothing was microscopically examined. Nothing of significance was found in the debris taken from defendant's or Stuckmeyer's clothing. Examination of the debris from Albert's trousers by William Storer, an admittedly qualified chemist for the St. Louis Police Department, revealed a fragment of two-layered paint, pink over green in color. Microscopic examination of that fragment showed it to be identical in color, texture and layering sequence with a fragment of paint which Storer had removed from the rear door of the drug store at the point of the "pry marks" where the lock was broken. A color photograph of the paint specimens as taken by the witness was then, over objection of defendant, displayed through a projector to the jury.

The evidence in behalf of defendant consisted of the testimony of his wife, which was to the effect that defendant and she were together in the home of her sister all day, Sunday, August 14th, throughout the night of August 14–15th and until midmorning of the 15th.

■ Defendant contends that, inasmuch as he was acquitted of the charge of bur-

glary and that (he further contends) there was no "positive" proof that the value of property stolen was at least fifty dollars, the court of its own motion should have given an instruction to the jury as to the punishment prescribed for the stealing of property of the value of less than fifty dollars. See § 560.161, RSMo 1959, V.A.M.S., (to which revision all statutory references herein are made). None of the cases cited by defendant in support of his contention are even remotely in point under the facts here shown. All of the evidence (there was none to the contrary) was that the property stolen from the safe consisted of at least thirty dollars in coins, narcotics and drugs of the value of eighteen dollars, and money orders in the care and custody of the Finleys of the cash value of thirty dollars, a total of at least seventy-eight dollars. There was no evidence as to the value of the safe, but, inferably, it was of some value. There being no evidence tending to show or warranting a finding by the jury that the property was less than fifty dollars in value, there was nothing in the case upon which the court lawfully could predicate such an instruction. State v. Jordan, Mo., 235 S.W. 2d 379, 383; State v. Brewer, Mo., 338 S.W. 2d 863, 868. The contention cannot be sustained.

■ Defendant's brief further asserts that the evidence tending to show his brother Albert's complicity in the burglary was "intended to determine * * * the guilt * * * of [defendant], without giving due notice of such intention * * * in order that he might have prepared a defense to such unorthodox procedure." That contention is without merit. In this connection it should be noted that the motion for new trial alleges that the admission of the fragments of paint into evidence permitted the jury to determine the guilt of another rather than the guilt of defendant and that the relevance of the evidence was slight and its value was greatly outweighed by the prejudice which it introduced into the trial. The evidence in those respects, which we need not restate, tended strongly to show that

defendant had in his possession some of the property which, under the circumstances shown in evidence, he knew to have been stolen. The recent, exclusive and unexplained possession of portions of the property stolen in the course of the burglary clearly warranted the finding that defendant was one of the thieves. State v. Denison, 352 Mo. 572, 178 S.W.2d 449, 453; State v. Hite, Mo., 298 S.W.2d 411, 412; State v. Dobson, Mo., 303 S.W.2d 650, 651. Furthermore, the fact that the jury did not find defendant guilty of burglary demonstrates that it was not prejudiced against him by the evidence which tended to show that Albert physically participated in the burglary. These contentions are denied.

■ A further contention is that the court erroneously "allowed the introduction of evidence of another crime to be interjected into said trial, to-wit: possession of narcotics." The narcotics shown to have been in the possession of defendant were those shown to have been in the safe stolen from the store. They were a part of the corpus delicti and therefore competent, relevant and material.

■ A further contention is that the court, over objection of defendant, erroneously allowed the chemist, William Storer, to display a "slide" through the projector to the jury, for the reason that although Storer was an admittedly qualified chemist, he was not shown to be an expert in the production and development of the photograph shown through the projector. There is no suggestion in the record that the slide did not accurately portray the specimens as the witness had described them. In fact, he pointed out on the picture the colors of each specimen as he had observed and orally described them to the jury. Under the circumstances here shown, admission of the picture was not prejudicially erroneous. State v. Brown, Mo., 312 S.W.2d 818, 822. It was not necessary that the witness qualify as an expert photographer. The fact that the slide portrayed his observation of the specimens as he had orally described them

made it admissible. State v. Duncan, Mo., 316 S.W.2d 613, 619. See also State v. Moore, Mo., 303 S.W.2d 60, 65 [1], [2].

■ A further contention is that "the trial court erred in the giving of instruction number one in that it injected into the trial the guilt or innocence of a person not then on trial." The portion of that instruction to which defendant refers, in essential part, reads:

"The State of Missouri by the Amended Information * * * charges the defendant, WILLIAM ELMER KNICKER and ALBERT FREDERICK KNICKER with the offense of Burglary in the Second Degree and Stealing. A severance has been granted and the defendant WILLIAM ELMER KNICKER is now alone on trial, and he pleads not guilty, thereby raising an issue of fact between said Defendant and the State of Missouri, which you must determine from all the evidence in the case.

"It is the duty of the Court to instruct you on all questions of law arising in this case and it is your duty to receive such instructions as the law of the case, and to find the defendant William Elmer Knicker, guilty or not guilty, according to the law as declared by the Court."

The identical point here raised was considered by this court in State v. Deppe, Mo., 286 S.W.2d 776, 780–781, wherein it was said: "In a case where several have been jointly charged, although it would seem to be unnecessary, it is not necessarily prejudicial to a defendant who has been granted a severance to allude or instruct as to the fact, upon his separate trial, that he had formerly been jointly charged with others." Again, we suggest that the giving of the portion of the instruction above quoted served no purpose, but we do not find it to have been prejudicial. The contention is overruled

■ A further contention is that "the court erred in refusing to give an alibi instruction in accordance with the evidence of defendant." The court gave instruction No. 8, reading as follows:

"You are instructed that one of the issues in this case is what is known as an alibi; that is, it is claimed that the defendant was at another place at the time the alleged crime was committed. If, from all of the evidence you have a reasonable doubt as to whether the defendant was present when the crime was committed, then you should give the defendant the benefit of such doubt, and find him not guilty."

That was sufficient. State v. Howe, Mo., 343 S.W.2d 73, 75, and cases therein cited.

■ A further contention is that the trial court erred in giving instructions Nos. 2, 3 and 4 "for the reason that said instructions * * * assume that there were two or more persons guilty of committing the crime, whereas there [was] no evidence offered by the state to warrant such assumption and * * * the court invade[d] the province of the jury, and instructed[ed] the jury as to alleged facts not established by the evidence." Instruction No. 2 stated:

"All persons are equally guilty who act together with a common intent in the commission of a crime, and a crime committed by two or more persons acting jointly, is the act of all and of each one so acting. However, the mere presence of one at or near the scene of a crime who does not render him liable as a participator therein. If one is only a spectator, innocent of any unlawful act or criminal intent, and does not aid, abet, assist, advise or encourage another or others in the commission of a crime, that person is not liable as a principal or otherwise, and should be acquitted. If, however, a person be present, and by words or actions, aids, abets, assists, advises or encourages the crime with the intent that the words or

acts should encourage and abet the crime committed, then that person is equally guilty with the person or persons who actually commit the physical deed."

Instruction No. 3, which submitted the issue of defendant's guilt of the burglary charged in the information, included as one of the hypothesized findings that "the defendant, either acting alone or jointly with another, did" etc.; and further therein hypothesized a finding that the defendant "was present aiding, abetting, assisting or encouraging another if necessary, in wrongfully, forcibly and burglariously breaking" etc. Instruction 4, which submitted the issue of defendant's guilt of stealing in connection with the burglary charged, also hypothesized findings similar to those above quoted from Instruction No. 3.

Defendant is in error both in asserting that either of these instructions *assumes* there were two persons guilty of committing the crime of which he was found guilty and that there was no evidence to warrant such assumption. None of these instructions assumes any fact whatsoever. They merely correctly declare the law applicable to evidence such as was shown. The evidence with reference to the paint fragments tended to show that Albert was present and physically participated in breaking into the drug store. The weight and dimensions of the safe warrant an inference that more than one person engaged in its removal from the store and transportation to the point where it was found. The fact that defendant and Albert were together as they approached the car under surveillance and that defendant was carrying some of the stolen property which he placed into the car warranted and required the giving of the series of instructions, Nos. 2, 3 and 4. Instructions such as these, given under the circumstances here shown, are proper and have been many times approved. State v. Russell, Mo., 324 S.W.2d 727, 732; State v. Reece, Mo., 324 S.W.2d 656, 660; State v. Johnson, Mo., 347 S.W.2d 220, 223; State v.

Harris, Mo., 351 S.W.2d 713, 717; State v. Ruffin, Mo., 286 S.W.2d 743, 748; State v. Present, Mo., 344 S.W.2d 9, 10–11; State v. Siekermann, Mo., 367 S.W.2d 643. The contention is without merit.

■ A further contention is that instructions Nos. 4 and 5 "are so contrary as to what they respectively charge that the jury could not reasonably have followed them and were left to their own conjecture as to the verdict." S.Ct. Rule 27.20 requires that the "motion for a new trial * * * must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor." It is readily seen that the assignment states the bald general conclusion of conflict in the instructions which, he contends, renders them not reasonably understandable by the jury, without any specification whatever as to the manner in which the conflict allegedly exists. Instruction No. 4 hypothesizes the issue of defendant's guilt of stealing in connection with commission of the burglary. No. 5 hypothesizes a finding that if the jury finds defendant not guilty of burglary and then submits the issue of his guilt of stealing property of a value of at least fifty dollars. We find no conflict in them. The contention is denied.

Defendant's pro se brief also contains a "point" insisting that the court erred in refusing his motion for a verdict of acquittal for reasons that "by the states failure to establish by substantial evidence the body of the crime, the essential elements thereof, or the corpus *delecti* of the case, including the essential elements of the agency of the defendant therein, or to establish by circumstantial evidence, sufficient evidential facts to warrant a reasonable presumption of guilt, the Court erroneously and prejudicially abdicated its duty to decide all points of law in the case, and did, in effect by such denial of said motion and request inform the jury that according to the law, the state had submitted sufficient proof to warrant a guilty verdict, all of which is in violation of the due processes of law clauses of the Con-

**406**

stitution of Missouri, as well as the Constitution of the United States." Suffice to say that no such assignment was made in the motion for new trial. Furthermore, all of the alleged specifications of error therein set forth, and which he for the first time contends deprived him of due process of law in violation of the State and Federal Constitutions, have been hereinabove considered and ruled adversely to him.

Examination of the amended information under which defendant was tried shows it to be in due form. Sec. 560.156; State v. Zammar, Mo., 305 S.W.2d 441, 442–445; State v. Brewer, Mo., 338 S.W.2d 863, 866. The verdict is sufficient in form and responsive to the issues under which defendant was charged and tried; the punishment assessed is within the limits provided by law, §§ 560.161, 556.280; and the judgment is in due form of law.

The judgment is affirmed.

All of the Judges of the Division and HUNTER, Special Judge, concur.